BORDER NAT. BANK OF EAGLE PASS, TEX., v. AMERICAN NAT. BANK OF SAN FRANCISCO, CAL.*

(Circuit Court of Appeals, Fifth Circuit. July 19, 1922.)

No. 3806.

1. Banks and banking ⟡260(4)—"Guaranty" of national bank ultra vires.

A guaranty of a national bank is ultra vires; a "guaranty" being a promise to answer for the payment of some debt, or the performance of some obligation, in case of the default of another person, who is in the first instance liable for such payment or performance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Guaranty.]

2. Banks and banking ⟡271—National bank bound by its "letter of credit."

A national bank is bound by its "letter of credit," which confers authority on the person to whom it is addressed to advance money or furnish goods on the credit of the writer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Letters of Credit.]

3. Guaranty ⟡1, 27—"Guarantee" defined; promise to be construed as a whole.

"Guarantee" is a word frequently employed, in business transactions which do not provide for securing the promise or debt of another, to express an original, primary obligation. The promise, in which the word appears, is to be construed in the light of the evidence and as a whole.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Guarantee.]

4. Banks and banking ⟡271—Obligation of bank held letter of credit.

Where, in a contract for the purchase of sugar, the sellers and the plaintiff bank through which they transacted the business demanded as

⟡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Writ of error dismissed and certiorari denied 258 U. S. —, 43 Sup. Ct. 96, 67 L. Ed. —.

a condition precedent to their offer that it be secured by an irrevocable letter of credit, and defendant bank, fully cognizant of the acceptance of the offer as made by the buyer, and of the correspondence between the parties to the contract, wired plaintiff bank that it would guarantee irrevocably payment for account of buyer for sugar in amount and on conditions named, *held*, that the obligation of defendant bank was not a guaranty but a direct promise, and constituted in its legal effect a letter of credit.

**5. Contracts ⬦⟹153—Construction rendering contract valid preferred.**

A construction which renders a contract valid is to be preferred to one which renders it void.

**6. Banks and banking ⬦⟹191—Letter of credit need not be in particular form.**

A letter of credit is not required to be in any particular form.

**7. Banks and banking ⬦⟹145—Bank liable for certified check, although drawer has no funds on deposit.**

A bank is liable on its certified check to one who takes it on the faith of its certification, though the drawer has nothing to his credit in the bank.

**8. Bills and notes ⬦⟹77—Acceptance of draft presumes funds of drawer in hands of acceptor.**

The acceptance of a draft affords a presumption of funds of the drawer in the hands of the acceptor.

**9. Bills and notes ⬦⟹87—Promise to accept draft equivalent to acceptance.**

A promise to accept a draft is equivalent to its acceptance.

**10. Bills and notes ⬦⟹77—Presumption arises that bank accepting draft will require security.**

There is no difference in principle between a promise and an everyday acceptance of, or agreement to accept, a draft, and the presumption that a bank. will require security arises in one case as well as in the other.

**11. Bills and notes ⬦⟹77—Presumption that bank accepting draft will require security conclusive as to innocent relying party.**

The presumption that a bank, accepting a draft or agreeing to accept it, will require security, is conclusive in favor of an innocent party, who changes his position in reliance thereon.

**12. Banks and banking ⬦⟹271—Fact that draft is to be drawn in future does not invalidate transaction.**

Where a national bank guaranteed irrevocably payment for sugar purchased by its customer, cognizant of the terms and conditions of the contract, the fact that the draft therefor was to be drawn in the future did not invalidate the transaction.

**13. Banks and banking ⬦⟹271—Liability incurred on promise to accept draft sufficient consideration.**

Where a national bank guaranteed irrevocably payment for sugar purchased by its customer, cognizant of the terms and conditions of the contract, the fact that it received no benefit from its promise constituted no defense; the change of position of the seller, by incurring a liability of its own on the faith of the promise, being a sufficient consideration.

**14. Banks and banking ⬦⟹271—Guaranteeing irrevocably payment by bank for goods purchased by customer held not nonbankable.**

It is within the power of a national bank to issue its letter of credit unconditionally, and the fact that, in guaranteeing irrevocably payment for sugar purchased by its customer, it could not determine by the documents required to be attached to the bill of lading whether the terms and conditions of the contract were complied with did not render the transaction nonbankable.

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

15. Banks and banking ⚖⟹191—Bank, accepting unconditional letter of credit, may rely on presumption that issuing bank has protected itself.

When a letter of credit is issued unconditionally, a bank which accepts it has the right to rely on the presumption that the issuing bank, in compliance with its duty to its shareholders, has protected itself, by release from its contract or otherwise, against liability for failure to make investigations which are not usual or customary in banking circles.

16. Banks and banking ⚖⟹271—Violation of Federal Reserve Act no defense, in action on unconditional letter of credit.

In an action between two national banks on an unconditional letter of credit, the fact that the defendant bank violated the Federal Reserve Act (Comp. St. § 9786) relating to bankers' acceptances would not avail it as a defense; there being no penalties prescribed in the act for the invalidation of contracts.

17. Banks and banking ⚖⟹191—Independent guarantor liable, regardless of principal liability.

Where a bank guaranteed irrevocably payment for sugar purchased by its customer, it was an independent undertaking, and its liability was not dependent on the terms of the sales contract.

18. Bills and notes ⚖⟹44—Act making conditional promises nonnegotiable does not affect validity.

Negotiable Instruments Act of Texas (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—3), providing that an instrument to be negotiable must contain an unconditional promise to pay, and also (article 6001—196) providing that in any case not therein provided for the rules of the law merchant shall govern, affects conditional promises in so far as to make them nonnegotiable, but does not affect their validity.

19. Banks and banking ⚖⟹271—Goods correctly described in bill of lading need not be described in warehouse receipt.

Where a national bank guaranteed irrevocably payment for sugar purchased by its customer, its obligation did not require a description of the goods in the warehouse receipt, but it was sufficient if any of the documents attached to the draft contained the required description; the purpose being to enable the issuing bank to determine that a bill of lading had been issued for the particular kind and quantity of sugar ordered.

20. Banks and banking ⚖⟹271—Attempted cancellation of sales contract no defense, where letter of credit issued on faith of guaranteeing promise.

Where a national bank issued its own letter of credit on the faith of defendant bank's promise, guaranteeing irrevocably payment for sugar purchased by its customer, it was no defense that plaintiff bank should have minimized loss on being notified of the revocation of the letter of credit because of the customer's attempted cancellation of his contract to purchase.

21. Appeal and error ⚖⟹223—Defendant's duty to apply to trial court for correction of mistake in calculating amount of judgment.

Where a judgment was slightly excessive on the theory of recovery adopted by the trial court, it was defendant's duty to apply there for the correction of any mistake in calculation.

In Error to the District Court of the United States for the Western District of Texas; Duval West, Judge.

Action by the American National Bank of San Francisco, Cal., against the Border National Bank of Eagle Pass, Tex. Judgment for plaintiff, and defendant brings error. Affirmed.

⚖⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

R. D. Wright, of Eagle Pass, Tex., and William C. Douglas, of San Antonio, Tex. (Sanford & Wright, of Eagle Pass, Tex., and Douglas & Carter, of San Antonio, Tex., on the brief), for plaintiff in error.

S. J. Brooks and Howard Templeton, both of San Antonio, Tex. (Templeton, Brooks, Napier & Brown, of San Antonio, Tex., on the brief), for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. This is a suit by the American National Bank of San Francisco, Cal., herein called plaintiff, against the Border National Bank of Eagle Pass, Tex., herein called defendant. After the exchange of several telegrams, defendant's obligation to plaintiff, which is the basis of the suit, assumed the following form:

"We guarantee irrevocably payment for account Joseph De Bona covering purchase 200 long tons Orient white granulated sugar from Maldonado & Co. f. o. b. Frisco twenty-two cents pound duty paid San Francisco public weigher's certificates of weights July, August, September shipment drawing on us with railroad bills lading and/or warehouse receipts attached."

Besides a general denial, the defendant interposed special defenses to the effect that its undertaking was entered into as an accommodation, without security or consideration, and amounted to a guaranty of De Bona's obligation to Maldonado & Co.; that if De Bona and Maldonado & Co. ever entered into a contract, which is denied, it was a materially different one from the contract covered by defendant's guaranty; that De Bona repudiated his contract with Maldonado & Co. while it was wholly executory, and that defendant thereupon revoked its said guaranty; and that defendant had never received any benefit or thing of value out of the whole transaction. The court sustained exceptions to the special defenses.

April 22, 1920, De Bona, a broker at Eagle Pass, requested Maldonado & Co., brokers at San Francisco, to quote prices on refined granulated cane sugar for immediate or later delivery. April 23 Maldonado & Co. replied, and offered, subject to confirmation, from 100 to 200 long tons of Java white granulated sugar, for July, August, and September shipment from the Orient, at 22 cents per pound, f. o. b. San Francisco, upon being furnished with "irrevocable letter of credit by wire." April 24 De Bona informed Maldonado & Co. that in all probability he would accept their offer of 200 tons, and inquired if they would confirm sale. Maldonado & Co. replied that, before they would confirm sale, "you must have your bank wire American National Bank irrevocable letter of credit with order." Thereupon De Bona accepted Maldonado & Co.'s offer, and stated: "Border National Bank this city guaranteeing." During these negotiations the Border Bank notified Maldonado & Co. that it would guarantee De Bona's contract for July, August, and September delivery, but, upon Maldonado & Co. notifying De Bona that their offer provided for shipment, instead of delivery, during the months mentioned, the Border Bank modified its undertaking with the American Bank accordingly. In pursuance of the negotiations and contract between De Bona

and Maldonado & Co., the Border Bank sent to the American Bank the obligation sued on. The entire correspondence was carried on by telegram.

Thereupon Maldonado & Co. contracted with Amsinck & Co. for the purchase of sugar with which to fill their contract with De Bona. Amsinck & Co. required of them a letter of credit, which was furnished by the American Bank to the amount of $96,300, in reliance upon its contract with the Border Bank. June 19, 1920, De Bona undertook to cancel his contract with Maldonado & Co., and June 22, 1920, the Border Bank gave notice of the revocation of its obligation to the American Bank. But both Maldonado & Co. and the American Bank insisted upon performance.

The sugar was shipped from Java in September, 1920, and the American Bank paid out on its letter of credit $96,310.11, and on November 22, 1920, presented Maldonado & Co.'s draft for $98,594.88, payable to itself, with bill of lading, warehouse receipts, and other documents attached, to the Border Bank. The bill of lading called for the sugar described in defendant's obligation. Payment of the draft was refused, and thereafter the sugar was sold at public auction for $28,534.46.

The court sustained objections to defendant's offer to prove that De Bona had no funds, assets, or security on deposit with it at any time during the year 1920 or since; that during all said time De Bona was insolvent; and that defendant had at no time applied to the Federal Reserve Board for enlargement of its powers as to bankers' acceptances or otherwise. At the conclusion of the evidence the court directed a verdict for plaintiff, and entered judgment thereon for $72,368.84, which, it was calculated, represented the difference between the proceeds of sale of the sugar and the amount paid out by plaintiff on its letter of credit, together with interest and expenses incident to storage and sale.

The defendant assigns error and contends: (1) That the obligation sued on is ultra vires, because it is in legal effect a guaranty or lending of credit, and not a letter of credit; it contemplates a nonbankable transaction; and it contravenes certain provisions of the Federal Reserve Act, relating to bankers' acceptances. (2) That the said obligation is unenforceable, because it was dependent upon the sales contract between De Bona and Maldonado & Co.; it was not an unconditional acceptance, as required by the Negotiable Instruments Act of Texas; and sugar of the kind required was not described in the warehouse receipt attached to plaintiff's draft. (3) That the judgment is excessive.

[1, 2] 1. A guaranty is a promise to answer for the payment of some debt, or the performance of some obligation, in case of the default of another person, who is in the first instance liable for such payment or performance. A letter of credit confers authority upon the person to whom it is addressed to advance money or furnish goods on the credit of the writer. Daniel on Negotiable Instruments (6th Ed.) §§ 1752, 1790; 12 R. C. L. 1053, 1065. It is well settled that the guaranty of a national bank is ultra vires. 3 R. C. L. 425. But

a national bank is bound by its letter of credit. Decatur Bank v. St. Louis Bank, 21 Wall. 294, 22 L. Ed. 560.

[3] The defendant insists upon a strict construction of the word "guarantee," contained in its contract. If there were nothing to limit, qualify, or explain its meaning, that word might reasonably be construed to imply a promise to pay De Bona's debt in the event he failed to do so. But to ignore the circumstances in which it was used is to attach too much importance to it. It is a word which is frequently employed in business transactions, which do not provide for securing the promise or debt of another, to express an original, primary obligation. The promise, in which the word appears, is to be construed in the light of the evidence and as a whole.

[4] It was the intention of the parties to the sugar contract to secure it by a letter of credit. Maldonado & Co. required that form of security as a condition precedent to their offer. That offer was accepted by De Bona as made. The American Bank was also making the same requirement. The Border Bank was fully cognizant of the correspondence between the parties to the sugar contract. It therefore knew of the requirement that a letter of credit be furnished. It would be imputing bad faith to the Border Bank to conclude that it deliberately attempted to substitute a guaranty for a letter of credit. But clearly that was not the case. The Border Bank readily consented to every suggestion of change, and evidenced an intention to comply with every requirement made by the American Bank. The only reasonable conclusion from the evidence is that the banks, as well as the parties to the sugar contract, contemplated and intended a letter of credit. The defendant's obligation is consistent with the intention of the parties. It does not purport to secure payment by De Bona, but for his account. The promise is not that defendant would pay if De Bona did not, but that defendant would pay in the first instance.

[5] A construction which renders a contract valid is to be preferred to one which renders it void. 2 Williston on Contracts, § 620. We are therefore of opinion that defendant's obligation, tested by its terms and by the intention of the parties, as shown by the circumstances preceding and surrounding it, is not a guaranty, but is a direct, independent promise, and constitutes in legal effect a letter of credit.

The defendant relies upon Merchants' Bank of Valdosta v. Baird, 160 Fed. 642, 90 C. C. A. 338, 17 L. R. A. (N. S.) 526; Commercial National Bank v. Pirie, 82 Fed. 799, 27 C. C. A. 171; Thilmany v. Iowa Paper Bag Co., 108 Iowa, 333, 79 N. W. 68; and Bowen v. Needles National Bank (C. C.) 87 Fed. 430. In the first case, the Merchants' Bank agreed to pay checks in unlimited amounts. In the second case, the bank undertook to guarantee to Pirie the "payment of any bill of goods which Mr. T. R. Webb may buy of you while in Chicago during the present week." The undertaking disclosed on its face that it was unlimited as to amount. In the third case, the Iowa National Bank agreed to guarantee obligations of the Iowa Paper Bag Company, "to the extent of the cost of a carload of bag paper, for the next 12 months." In the fourth and last case, Bowen

accepted the bank's check in lieu of checks of one who had no funds on deposit, and the court held upon the evidence that he did so with full knowledge of the facts.

In each of these cases the bank was held not liable, but in none of them were the facts similar to the facts in this case. Here the obligation is for a definite amount which is readily ascertainable, and is not dependent upon a debt to be incurred in the future. There was no evidence or offer to prove that plaintiff knew, or had any reason to suspect, that defendant made its promise without first requiring security, and without consideration. The banks are in cities far apart, and plaintiff had no notice or knowledge, except as disclosed on the face of the papers.

[6-11] A letter of credit is not required to be in any particular form. Even a formal letter of credit rarely, if ever, discloses on its face that the bank issuing it is secured. A bank is liable on its certified check to one who takes it upon the faith of its certification, though the drawer has nothing to his credit in the bank. Thompson v. St. Nicholas National Bank, 146 U. S. 240, 13 Sup. Ct. 66, 36 L. Ed. 956. Likewise the acceptance of a draft "affords a presumption of funds of the drawer in the hands of the acceptor." Raborg v. Peyton, 2 Wheat. 385, 4 L. Ed. 268. And a promise to accept a draft is equivalent to an acceptance of it. Coolidge v. Payson, 2 Wheat. 66, 4 L. Ed. 185. There is no difference in principle between defendant's promise and the everyday acceptance of, or agreement to accept, a draft. The presumption that a bank will require security arises in one case as well as in the other; and that presumption is conclusive in favor of an innocent party, who changes his position in reliance upon it. Scudder v. Union National Bank, 91 U. S. 406, 414, 23 L. Ed. 245.

[12, 13] The fact that the draft was to be drawn in the future does not invalidate the transaction. Coolidge v. Payson, supra. The fact that defendant derived no benefit from its promise constitutes no defense. The plaintiff's change of position, by incurring a liability of its own on the faith of the promise, was sufficient consideration. Townsley v. Sumrall, 2 Pet. 170, 182, 7 L. Ed. 386; Violett v. Patton, 5 Cranch., 142, 3 L. Ed. 61.

[14, 15] It is contended that defendant's obligation was nonbankable, because it contained no provision for ascertaining from the documents required to be attached to the bill of lading whether the sugar was shipped by the end of September, or that it was Orient white granulated sugar. The underlying reasons for this contention are that banks do not have facilities for determining when shipments are made, or whether goods are of the kind required; that banks deal in documents, and that these documents should disclose all the facts necessary to enable them to determine whether their contracts are being complied with. A number of cases are cited in support of this contention, but in none of them were the transactions held to be nonbankable. It was within the power of the defendant to issue its letter of credit unconditionally. Hoffman v. Bank of Milwaukee, 12 Wall. 181, 20 L. Ed. 366. But, if it chose to do so, it could prescribe

any and all conditions it deemed necessary. When a letter of credit is issued unconditionally, a bank which accepts it has the right to rely upon the presumption that the issuing bank, in compliance with its duty to its shareholders, has protected itself, by release from its contract or otherwise, against liability for failure to make investigations which are not usual or customary in banking circles.

[16] If it be conceded or assumed that defendant violated the provisions of the Federal Reserve Act relating to bankers' acceptances (Comp. St. § 9786), it is not perceived that any advantage would be gained by it in this suit. Penalties for violations of the act are prescribed, but none of them include the invalidation of contracts. Thompson v. St. Nicholas Bank, 146 U. S. 240, 13 Sup. Ct. 66, 36 L. Ed. 956; Hanover National Bank v. First National Bank, 109 Fed. 421, 48 C. C. A. 482.

[17] 2. We have already stated that, in our opinion, defendant's obligation constitutes an independent undertaking. It necessarily follows that it was not dependent upon the sales contract between De Bona and Maldonado & Co. It therefore becomes unnecessary to consider the terms of the sales contract, whether it was materially different from the contract between the banks, or whether it was canceled. Bank of Plant City v. Canal-Commercial Bank (C. C. A.) 270 Fed. 477.

[18] It is required by the Negotiable Instruments Act of Texas (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—3) that an instrument to be negotiable must contain an unconditional promise to pay. But the act also provides (article 6001—196) that in any case not therein provided for the rules of the law merchant shall govern. The act only affects conditional promises in so far as to make them nonnegotiable; it does not affect their validity.

[19] The sugar was correctly described in the bill of lading, but it is contended that it should have been described in the warehouse receipt. The defendant's obligation did not require a description in the warehouse receipt. That obligation was complied with if any of the documents attached to the draft contained the required description. The purpose was to enable the defendant to know that a bill of lading had been issued for the particular kind and quantity of sugar ordered.

[20] 3. It is insisted that plaintiff should have minimized its loss, upon being notified by defendant of the revocation of the letter of credit because of De Bona's attempted cancellation of his contract with Maldonado & Co. But plaintiff had bought no sugar, and had none to sell. It was bound by its own letter of credit, issued upon the faith of defendant's promise.

[21] It is also claimed, for the first time on this writ of error, that the judgment is slightly excessive, upon the theory of recovery adopted by the trial court. If that be true, it nevertheless was defendant's duty to apply to the trial court, which doubtless would have corrected any mistake in calculation. But we are unable to perceive that any mistake in the amount of the judgment was made. It is contended that storage was charged on 4,008 bags of sugar, whereas the sugar

called for by defendant's obligation was contained in 2,007 bags. It is clear that the charge only included storage for the sugar involved in this suit. An item of insurance which accrued after the sugar was sold is contested, but the sugar was not delivered on the date of sale. Finally, the sugar was shown to contain a less number of pounds when sold than when stored, but that fact was doubtless due to shrinkage. At any rate, it is not made to appear that the judgment was for a greater amount than was recoverable under the evidence.

Error is not made to appear by any of the assignments, and the judgment is affirmed.