**DULIEN STEEL PRODUCTS, INC., OF WASHINGTON, Plaintiff-Appellant,**

v.

**BANKERS TRUST COMPANY, Defendant-Appellee.**

No. 69, Docket 26831.

United States Court of Appeals Second Circuit.

Argued Dec. 4, 1961.

Decided Jan. 19, 1962.

Ira M. Millstein, New York City (Weil, Gotshal & Manges, New York City, on the brief, Michael A. Schuchat, Washington, D. C., Marshall C. Berger, New York City, and Geiger, Harmel & Schuchat, Washington, D. C., of counsel), for plaintiff-appellant.

Orison S. Marden, New York City (White & Case, New York City, on the brief, William D. Conwell, George P. Vlassis, New York City, of counsel), for defendant-appellee.

Before WATERMAN, SMITH and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

Plaintiff appeals from a judgment of the United States District Court for the Southern District of New York, Bryan, J., denying plaintiff's motion for summary judgment and granting defendant's cross-motion for summary judgment. This action arises out of the payment by defendant, Bankers Trust Company (Bankers), of the face value of a letter of credit in the amount of $60,500 to the named beneficiary, Richard Sica (Sica), designated by plaintiff, Dulien Steel Products Inc. (Dulien), in a letter of credit issued on its instructions and confirmed by defendant. Dulien seeks to recover from Bankers the amount so paid. Dulien is a Washington corporation; Bankers a New York corporation. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

Dulien makes two claims. The first is that since Bankers repeatedly requested instructions it should not have paid Sica in disregard of instructions not to pay. The alternative claim is that Bankers was negligent in failing to give notice that it would disregard these instructions and pay Sica. Involved in this latter claim is an assertion of some form of estoppel against Bankers in that the requests for instructions led Dulien to believe Bankers would not pay Sica.

Dulien moved for summary judgment pursuant to Rule 56 F.R.Civ.P, 28 U.S. C.A., on its first claim only. Bankers cross-moved for summary judgment on both claims. The district court denied plaintiff's motion and granted defendant's motion. We affirm.

The motions were submitted on affidavits supplemented by depositions. With one exception, there is no dispute as to the facts. Sometime in early 1956 Dulien entered into a contract to sell scrap steel through the Office Commun des Consummateurs de Ferraillie (O. C. C. F.), the purchasing authority for the European Iron & Steel Community. Payment to Dulien in an amount in excess of $3,000,000 was to be accomplished through several letters of credit established in its favor. An organization known as Marco Polo Group Projects, Ltd., Tangiers (Marco Polo), was apparently entitled to a commission from Dulien for having arranged the transaction. Payment to Marco Polo was to be made through two letters of credit, only one of which is involved here.

On June 29, 1956, Seattle-First National Bank (Seattle), Seattle, Washington, sent its irrevocable letter of credit to Bankers Trust Company in the amount of $60,500. The letter of credit was addressed to Richard Sica and authorized

him to value on Bankers for the account of Dulien to the extent of $60,500. It provided that this money would be available to him on his "simple receipt" reading as follows:

"'Received from The Bankers Trust Co. of New York the sum of Sixty Thousand Five Hundred Dollars U. S. Currency, for services rendered through the Marco Polo Group Projects Ltd. of Tangier' * * * *"

And upon the following condition:

"* * * and a written notification from The Seattle First National Bank of Seattle, Washington, * * * and/or an official telegraph advice from The Seattle First National Bank at Seattle to The Bankers Trust Company, Foreign Department, New York City, wherein such written notification &/or telegraphic advice indicates, reveals &/or confirms that the Dulien Steel Products Inc. of Washington, Seattle, Washington, has negotiated official documents for payment against any of the Letters of Credits established to the name of Dulien Steel Products Inc. of Washington, Seattle, Washington, which Letters of Credits cover Contract No. 28/Namc as issued to the name of Dulien Steel Products Inc. of Washington, Seattle, Washington, by the O. C. C. F., at 36 Rue Ravenstein, Bruxelles, Belgium—"

The letter of credit also provided:

"Payment in full as outlined herein shall be made without question * * * Drafts to be negotiated not later than September 30, 1956."

It further provided:

"Except as expressly stated negotiations under this credit are subject to the uniform customs and practice for commercial documentary credits fixed by the Thirteenth Congress of the International Chamber of Commerce."

On July 10, 1956, Bankers confirmed the obligation by advising Sica that "We [Bankers] confirm the credit for its present validity of September 30, 1956 and for its present amount of $60,500.00 and thereby undertake that all drafts drawn and presented as specified in the credit will be duly honored." Bankers' confirmation charge for undertaking this obligation to make payment of $60,500 to Sica, the beneficiary, was $15.13.

On September 27, 1956, Sica's attorney delivered to Bankers, along with a letter, a simple receipt signed by Sica which admittedly satisfied the description of the receipt required in the letter of credit. He also enclosed a draft, the original letter of credit and Bankers' confirmation. He requested Bankers to request telegraphic advice from Seattle when the documents were negotiated as required by the letter of credit.

On October 1, 1956, Bankers wired Seattle as follows:

"REFER YOUR CREDIT 14718 OUR REFERENCE 75632 SIMPLE RECEIPT FOR $60,500.00 CALLED FOR IN CREDIT HAS BEEN PRESENTED TO US WITH REQUEST TO NOTIFY YOU IMMEDIATELY BY WIRE AND RECEIVE YOUR AUTHENTICATED WIRE INSTRUCTIONS TO EITHER HONOR OR DISHONOR THE PRESENTATION. PLEASE WIRE MAY WE PAY AGAINST SIMPLE RECEIPT."

On October 1, 1956, Seattle replied as follows:

"REUR BANKWIRE TODAY REGARDING YOUR REF. NO. 75632 OUR CREDIT 14718 DRAWING FOR $60,500.00. OUR ANSWER IS YOU MAY NOT PAY. NO DOCUMENTS HAVE BEEN NEGOTIATED AGAINST ANY OF THE LETTERS OF CREDITS ESTABLISHED TO THE NAME OF DULIEN STEEL PRODUCTS INC. OF WASHINGTON, SEATTLE, WASHINGTON, LETTERS OF CREDIT COVER CONTRACT NO. 28/NAMC AS ISSUED TO THE NAME OF DULIEN STEEL PRODUCTS INC. OF WASHINGTON,

SEATTLE, WASHINGTON, BY THE O. C. C. F. AT 36 RUE RAVENSTEIN, BRUXELLES, BELGIUM. WE UNDERSTAND LETTER OF CREDIT 14718 WILL BE AMENDED SHOWING EXPIRY OCTOBER 31, 1956. SEATTLE FIRST NATL BANK SEATTLE 1121A FOREIGN DEPT."

Prior to October 1, however, completely unknown to Bankers, Dulien had completed negotiations with Marco Polo looking toward, among other things, a modification of earlier understandings between them.

These negotiations culminated in a letter from Marco Polo dated August 29, 1960 agreeing to substantial amendments to the terms and conditions of the outstanding letter of credit. Under the proposed amendments the face amount was to be reduced from $60,500 to $35,500 and payment of this reduced amount was to await full payment to Dulien by "O. C. C. F."

Seattle received the Marco Polo letter of modifications through Dulien with its approval about September 10, 1956. On September 11, Seattle wrote Dulien suggesting changes in the proposed modifications which are not significant here, and also stating:

"It would be preferable to issue an entirely new letter of credit * * * but if this is not possible the foregoing amendments undoubtedly would serve the same purpose. * * *

"If you approve, please sign and return the enclosed copy or advise us of any objections you may have."

Neither Dulien nor Seattle advised Bankers as to these communications, nor sent copies to Bankers at this time, and Bankers was wholly unaware of them until October.

On October 2, 1956, the day after the Seattle Bank had advised Bankers that Dulien had not negotiated the documents, but that it understood that the credit in favor of Sica would be extended, it wrote Bankers at Dulien's request that the credit to Sica had been extended to October 31 and that "all other terms and conditions remain unchanged." The extension was authorized by a Vice-President of Dulien upon a request by Marco Polo. At the time, the officers of Dulien familiar with the transactions in question were absent from Seattle, and Marco Polo took advantage of the Vice-President's ignorance of the new arrangements. Bankers thereupon made the corresponding change in its credit and confirmed the credit as thus extended to Sica's attorney. Thus, the original letter of credit was extended at Dulien's own request for another month without modification.

Had this extension not been requested by Dulien the present controversy would never have arisen. The original letter of credit could not have been paid and Sica would not have been in a position to force payment.

On October 8, 1956, Bankers again wired Seattle Bank for advice as to whether Dulien had negotiated the documents under the O. C. C. F. credits and asked "may we pay?" The next day, October 9, the Seattle Bank replied that Dulien had negotiated the designated documents. Thus, at this point the conditions of the letter had been met and Bankers Trust was required to honor drafts of Sica against the original letter of credit as extended without modification.

In the October 9 wire, however, Seattle Bank, although it had been aware of the proposed modifications since September 10, for the first time notified Bankers that "Dulien * * * has requested that payment be deferred * * * because of arrangements between them and the Marco Polo Group Projects, Ltd. * * *." It listed the proposed amendments and concluded with a request that Bankers "contact" Sica for "acceptance of the proposal and amendments * * *."

In response to Bankers' advice to Sica requesting acceptance of the proposed changes, Sica's attorney informed Bankers by registered mail on October 10 that Sica "has not effected any modification of the original letter of credit * * * and therefore expects payment in the

amount reflected in such original letter of credit."

Bankers immediately notified Seattle Bank of Sica's position, quoting his attorney's letter in full. Its wire concluded with the word "Instruct." Upon receipt of his message Seattle informed Dulien of its contents and requested instructions as to what to "advise Bankers Trust Company." Dulien was also informed that if its instructions were "to reject the request to pay, you must supply us [Seattle Bank] with a letter of indemnity * * * [to] hold us harmless against any loss or damage whatsoever by reason of such rejection or refusal of payment." Dulien promptly agreed to the required indemnity, stated that "our obligation under this Letter of Credit lies with Marco Polo Group Projects, Ltd. and not in Richard Sica as an individual," and instructed Seattle Bank to reject payment except in accordance with the amendments.

Fortified by the indemnity Seattle Bank wired Bankers Trust on October 12 "Do not pay," quoted Dulien's letter to the effect that the obligation was to Marco Polo, not to Sica individually, and advised that instructions to Sica's attorney to accept the modifications would be forthcoming from Italy. No mention was made by Dulien or Seattle Bank of Dulien's agreement to indemnify Seattle not was any offer made to indemnify Bankers if it failed to pay Sica.

On October 15, three days later, Bankers replied to Seattle that Sica still refused to accept the amendments and was "urgently pressing for payment." It again asked "May we pay." Seattle Bank replied the same day: "Our position remains the same * * *." The next day Bankers Trust wired Seattle Bank:

"Your credit 14718 paid today $60,500.00 Stop Informative we

quote contents letter dated October 16 received from H. G. Shields attorney for Richard Sica Quote I have been authorized by Mr. Richard Sica to demand payment now due under the above numbered confirmation and letter of credit. Mr. Sica has authorized me to insist that payment be made forthwith, and if it not be made, then I have been authorized to institute action for the collection of same against you and the Seattle-First National Bank Unquote." [1]

## I

■ Plaintiff's claim of negligence is without merit. Plaintiff alleges that Bankers "failed to exercise that degree of care and prudence exercised by banks in comparable circumstances and to which plaintiff was entitled in conformity with established custom and usage in banks generally." An additional claim is that there is a dispute as to whether Bankers notified Dulien that it was going to pay Sica and this dispute should have been submitted to a jury.

Involved here is an irrevocable letter of credit providing for payment "without question" once the following terms were met: (1) presentation of a simple receipt and (2) notification from the Seattle Bank that certain documents had been negotiated. Both conditions were admittedly fulfilled.

■ The duties of a bank under a letter of credit are created by the document itself, the bank being deprived of any discretion not granted therein.

"But in any case the bank has the power and is subject to the limitations which are given and imposed by this authority. If it keeps within the powers conferred it is protected in the payment of the draft. If it transgresses those limitations it pays at its peril. A customer

1. An affidavit by the assistant manager of the Seattle Bank's Foreign Department is to the effect that before payment was made he received a telephone call from Bankers' vice president Sime, who told him that Bankers would pay Sica since all the conditions on the original credit had been met. While there appears to be a dispute as to whether Seattle advised Dulien of the call we agree with Judge Bryan that, "it makes no difference here."

having the right to prescribe and phrase limitations as he desires, it it our duty to give to language its ordinary and sensible meaning which will neither destroy the protection which the customer has exacted, nor, on the other hand, impose upon the bank some obligation not fairly warranted by the language which has been adopted by the parties." Laudisi v. American Exchange Nat. Bank, 239 N.Y. 234, 239, 146 N.E. 347, 348 (1924).

Plaintiff seeks to impose a further duty on Bankers to go beyond the terms of the letter of credit and investigate "the fraud being attempted against plaintiff." But as Chief Judge Hiscock points out in Laudisi: "[T]he bank is not obliged to assume the burdens of a controversy between the vendor and vendee and incur the responsibility of establishing as an excuse for not paying a draft that the vendee's version is the correct one" (239 N.Y. 234, 243, 146 N. E. 347, 350); see also: O'Meara Co. v. National Park Bank, 239 N.Y. 386, 146 N.E. 636, 39 A.L.R. 747 (1925).

Plaintiff cites but one case to support its position. Sztejn v. Schroder Banking Corp., 177 Misc. 719, 31 N.Y.S.2d 631 (Sup.Ct., N.Y.Co.1941). That case involved a suit to restrain payment of a letter of credit and to have it declared null and void because it was alleged the seller had engaged in a scheme to defraud the buyer. No doubt Dulien could have used this case as authority for an action seeking to restrain Bankers from paying Sica. But here Bankers never had notice of the type of fraud Sztejn seems to require. Dulien's own behavior was indicative more of one merely suspicious of than one certain of fraud.

 The rule in New York seems well established that a bank issuing or confirming a letter of credit is not concerned with the underlying contract between the buyer and seller in the absence of appropriate provisions in the letter of credit. Imbrie v. Nagase & Co., Ltd., 196 App.Div. 380, 383, 187 N.Y.S. 692,

695 (2d Dept., 1921); Asbury Park & Ocean Grove Bank v. National City Bank of New York, 35 N.Y.S.2d 985 (Sup.Ct. N.Y.Co., 1942), aff'd 268 App.Div. 984 (1st Dept., 1944).

It appears that sometime prior to September, 1956, Dulien and Marco Polo agreed to amend the letter of credit to reduce the amount to $35,500 and in other respects. Dulien and Seattle Bank had some discussion of this but did not discuss any of this with Bankers Trust. The original letter of credit expired on September 30, 1956. Dulien could have caused to be issued a new letter of credit with the new terms agreed to by Marco Polo and with a new beneficiary if it so chose. Instead, Dulien on October 1, 1956 extended the expiration date of the original letter of credit to October 31, 1956. In extending the expiration date to October 31, 1956, Bankers Trust was instructed: "All of the terms and conditions are unchanged by this letter." Thus, Dulien placed upon Bankers an almost absolute legal duty to pay Sica upon demand. Whatever loss Dulien suffered was not from the negligence of Bankers Trust. The fact that Dulien may have been beguiled into the extension by Marco Polo does not alter this conclusion. Dulien should have been put on guard by such conduct and taken action to protect itself beyond reliance upon an unjustified expectation that the party with the least knowledge of the transaction and the greatest obligation to pay would violate its legal duty. As Judge Bryan stated: "This action is a belated attempt to shift Dulien's loss to a party who has no responsibility therefor."

II

 There was no contract between plaintiff and defendant. All of Dulien's negotiations were with Seattle Bank. Faced with this admitted lack of privity of contract between Dulien and Bankers Trust, plaintiff's second ground for relief is an effort to spell out either equitable or promissory estoppel. The estoppel is said to arise from the action of the de-

féndant in asking Seattle Bank "may we pay" and alleged belief of plaintiff that Bankers Trust would not pay. Dulien relies on the exchange of telegrams between Bankers Trust and Seattle Bank during the period from October 1, 1956 to October 16, 1956. There were no communications between Bankers Trust and Dulien and therefore no representations by Bankers Trust to Dulien. In an effort to offset this absence of the requisite privity, Dulien asserts that Seattle Bank was its agent since Seattle Bank issued the letter of credit at its request. The law is to the contrary. Kingdom of Sweden v. New York Trust Co., 197 Misc. 431, 445–446, 96 N.Y.S.2d 779 (Sup.Ct., N.Y.Co., 1949).

The only fact in dispute is whether or not a last minute telephone call from Bankers Trust to Seattle Bank notifying them it was going to pay was transmitted to Dulien by Seattle Bank. Whether or not this happened is of no significance here. Assuming *arguendo* that the contents of Bankers' wires to Seattle were communicated to Dulien, they were not sufficient to justify a belief that payment would not be made.

It is true that Bankers Trust asked Seattle to "instruct" in one telegram and "May we pay" in another. Nowhere is there any language for Seattle or Dulien to assume that Bankers Trust would not pay after all of the conditions had been met, the amendments proposed by Dulien had been rejected by Sica, and Sica was demanding payment. Certainly, Bankers Trust could not have been expected to subject itself to a lawsuit by Sica on its firm obligation to pay without even an offer of indemnification. Seattle Bank and Dulien were aware of Bankers Trust's duty to pay Sica. Indeed, Seattle went so far as to obtain indemnification for itself from Dulien against loss or damage resulting from a rejection of the demand to pay. This act, however, cannot be attributed to Bankers, and Bankers cannot be responsible for whatever erroneous beliefs it may have created on Dulien's part. Bankers in fact neither requested nor received indemnification.

Plaintiff again relies only upon Sztejn v. Schroder Banking Corp., 177 Misc. 719, 31 N.Y.S.2d 631 (Sup.Ct., N.Y.Co., 1941). This case merely supports Dulien's right to seek an injunction restraining payment to Sica on the part of a bank otherwise obligated to do so. But this is exactly what Dulien failed to do.

There is no estoppel here. There was no promise and it is therefore impossible to spell out promissory estoppel. There is no equitable estoppel because there could be no valid reliance on an assumption that Bankers Trust would breach an enforceable obligation to pay Sica.

Affirmed.