In re PRINTING DEPARTMENT, IN-CORPORATED, Debtor-in-Possession.

PRINTING DEPARTMENT, INCORPORATED, Plaintiff,

v.

XEROX CORPORATION, Defendant.

Bankruptcy No. 80–00490.

United States Bankruptcy Court,
E. D. Virginia,
Richmond Division.

Sept. 17, 1981.

John F. Ames, Richmond, Va., for plaintiff.

Fred W. Palmore, III, Mays, Valentine, Davenport & Moore, Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes on upon the filing by Printing Department, Incorporated (Printing Department), Debtor-in-Possession, of a Motion to Show Cause, and upon the filing by Xerox Corporation (Xerox) of a Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6) and Bankruptcy Rule 712(b). Printing Department moved that a show cause be issued against creditor, Xerox, requiring it to show cause why it should not be found in civil contempt for failing to comply with 11 *U.S.C.* § 362 providing for the automatic stay of bankruptcy granted to the Debtor-in-Possession. Xerox answered with a Motion to Dismiss. Upon the filing of the response to Xerox's Motion to Dismiss, the Court heard oral argument, by counsel, and briefs were submitted. Upon the forego-

ing, the Court makes the following determination.

## STATEMENT OF THE FACTS

Virginia National Bank (V.N.B.) issued an irrevocable letter of credit, No. S–2143 in the amount of $6,000 on June 26, 1979, in favor of Xerox. The letter of credit was issued for account of Printing Department and committed V.N.B. to honor Xerox's drafts provided those drafts did not exceed, in the aggregate, $6,000. The agreement required that a written statement certifying that Printing Department defaulted in its agreement with Xerox accompany each draft. Xerox also was required to certify that it was entitled to the amount of the draft and that no portion had been paid by Printing Department, although duly demanded.

On March 25, 1980, Xerox drew a $6,000 draft on the letter of credit and submitted it to V.N.B. The draft was returned by V.N.B. as inadequate or insufficient.

On April 9, 1980, the Debtor filed a Voluntary Petition for Reorganization under Chapter 11 of the Bankruptcy Code. Xerox resubmitted the draft on April 16, 1980. V.N.B. then paid Xerox the $6,000 in accordance with the terms of the letter of credit.

Printing Department brought this action alleging that Xerox should be found in civil contempt for failing to comply with the automatic stay provisions of § 362 of the Bankruptcy Code.

## MEMORANDUM OF LAW

The Court faces the issue whether a beneficiary may collect on an irrevocable letter of credit once the customer has filed a petition in bankruptcy. For the reasons stated below, this Court grants the Motion by Xerox to dismiss Printing Department's Complaint for its failure to state a claim upon which relief can be granted.

An important purpose of the Bankruptcy Code is the protection of the property of the debtor and of the estate during insolvency

proceedings. This task is accomplished by operation of the automatic stay provisions of 11 *U.S.C.* § 362(a). The stay gives the debtor a breathing spell from his creditors and provides him with an opportunity to reorganize his affairs. *H.R.Rep.No.* 95–595, 95th Cong., 1st Sess. 340–2 (1977); *S.Rep.No.* 95–989, 95th Cong., 2d Sess. 49–51 (1978), U.S.Code Cong. & Admin. News, p. 5787. Subsection (a) defines the scope of the automatic stay by enumerating certain acts which are forbidden. The filing of an insolvency petition under the Bankruptcy Code operates as a stay *inter alia* of:

"Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, or a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor." 11 *U.S.C.* § 362(a).

■ The subsection's scope is broad. All proceedings against the property of the estate or the property of the debtor are prohibited. The requisite showing of interference with the estate must be present, however, to stay an action under § 362(a) of the Bankruptcy Code. *In re Roll Form Products, Inc.,* 8 B.R. 479, 484, n. 28 (Bkrtcy.S.D.N.Y.1981).

In the instant case, Xerox recovered on an irrevocable letter of credit issued in its favor by V.N.B. which was issued for the account of Printing Department. Printing Department filed its insolvency petition before Xerox recovered on the letter of credit. If by recovering on the letter of credit, Xerox interfered with the property of the estate or of the Debtor, then Xerox violated the stay. If Xerox did not interfere with the property of the estate or of the Debtor, then no violation of the stay occurred. In sum, whether Xerox violated the stay depends upon whether the letter of credit was part of the property of the estate or of the Debtor. *Id.*

The Virginia Code requires that a letter of credit be in writing and signed by the issuer. § 8.5–104, (1965, Added Vol.). Likewise a confirmation must be in writing and signed by the confirming bank. *Id.* § 8.5 of the Code of Virginia establishes and defines Virginia's law concerning letters of credit. A "letter of credit" is "an engagement by a bank or other person made at the request of a customer... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit...." *Va.Code* § 8.5–103(a), (Vol.1965). The Code defines a "customer" as "a buyer or other person who causes an issuer to issue a credit." and defines an "issuer" as "a bank or other person issuing a credit." *Va.Code* § 8.5–103(g), (c), (Vol.1965).

In this case, the letter's function was to secure performance of an obligation which Printing Department owed Xerox. The let-

ter of credit committed V.N.B. to honor Xerox's drafts when Xerox submitted a written statement certifying that Printing Department defaulted in its agreement with Xerox.

Counsel for Xerox argues that the letter of credit is a guaranty or suretyship agreement. This type of letter of credit has been termed a "guarantee" letter of credit. *O'Grady v. First Union National Bank*, 296 N.C. 212, 250 S.E.2d 587, 599 (1978). In *O'Grady*, a letter of credit issued by a bank served as collateral security on the note of a customer. The court used the term "guarantee letter of credit" because the letter of credit was "used to accomplish the ends of a contract of guarantee or suretyship." *Id.* Letters of credit are traditionally used in transactions for the sale of goods in which the bank becomes primarily liable for the payment to the seller of goods. *Id. Va. Code* § 8.5 does not distinguish between these two types of letters of credit. *Va. Code* § 8.5–103, (Vol.1965).

This type of letter of credit is analogous to a contract of guarantee and has been labeled as a particular class of guarantee because the issuer has promised to pay the customer's obligation in the event of default. 50 *Am.Jur.2d*, "Letters of Credit" § 6 (1970). Yet, a letter of credit is distinguishable from a contract of guaranty because under a contract of guaranty the issuer merely secures the debt of another while an issuer of a letter of credit assumes an original, primary obligation. *Border National Bank v. American National Bank*, 282 F. 73, (5th Cir. 1922), error dismd. and *cert. denied* 260 U.S. 701, 43 S.Ct. 96, 67 L.Ed. 471 (1922).

■ The Bankruptcy Code provides that the filing of a petition in bankruptcy operates to stay proceedings against the bankruptcy estate and the estate of the debtor. 11 *U.S.C.* § 362. The stay is inapplicable as far as it concerns property which is not part of the estate and which does not belong to the debtor. *Globe Construction Co. v. Oklahoma City Housing*, 571 F.2d 1140, 1143 (10th Cir. 1978), *cert. denied* 439 U.S. 835, 99 S.Ct. 117, 58 L.Ed.2d 131 (1979). In

*Globe Construction Co.*, a general contractor's surety was sued on a performance bond after the general contractor filed for a Chapter XI reorganization under the Bankruptcy Act. The court held that bankruptcy proceedings did not bar claims against a surety and entered judgment against the surety. The court opined that the purpose of the Bankruptcy Act was to place the property of the debtor under the control of the bankruptcy court. *Id.* The liability of the guarantor is joint and several to the liability of the principal. *Id.* The court concluded it had no jurisdiction to enjoin a party from recovering against the guarantor. *Id. See also, Loyd v. Steward & Nuss, Inc.*, 327 F.2d 642 (9th Cir. 1964), and *Jaquith v. Rowley*, 188 U.S. 620, 23 S.Ct. 369, 47 L.Ed. 620 (1903).

The Bankruptcy Court for the Southern District of New York explained in *In re Roll Form Products, Inc., supra*, that the Act allowed relief against guarantors and sureties only because the requisite showing of interference with the estate was absent. The principal inquiry which this Court must make, therefore, is whether Printing Department has shown that Xerox interfered with the Debtor's estate when it recovered under the letter of credit. Under the agreement reached by the parties concerning the letter of credit, Xerox had the right to seek to recover the $6,000 which Printing Department owed it. Printing Department defaulted on its agreement with Xerox. This action entitled Xerox to submit a statement to V.N.B. certifying that Printing Department had defaulted in its agreement with Xerox in claiming the balance due.

Under *Va.Code* § 8.5–114(1), the issuer must honor a demand for payment which complies with the terms of a letter of credit regardless of compliance with the underlying contract. The official comment to this section notes that "the letter of credit is essentially a contract between the issuer and the beneficiary and is recognized by this Article as independent of the underlying contract between the customer and the beneficiary.... The issuer is under a duty

to honor the drafts or demands for payment which in fact comply with the terms of the credit without reference to their compliance with the terms of the underlying contract." *Va.Code* § 8.5–114, (Vol.1965) Official Comment. The issuer of the letter of credit, therefore, assumes an original primary obligation wholly apart from the underlying contract which exists between the beneficiary and the customer. *Border National Bank, supra.* When Xerox submitted its draft to V.N.B., it was not asserting a claim against the Debtor or against any of the estate's property. It was enforcing a contract which existed between it and V.N.B., which was independent of any relationship between Printing Department and V.N.B.

 Furthermore, the issuer of a letter of credit "acts as a principal, not as agent for its customer, and engages its own credit." *Va.Code* § 8.5–117, (Vol.1965), Official Comment. When the bank issues an irrevocable letter of credit, it assumes an obligation to honor drafts which comply with that credit. *Dulien Steel Products v. Bankers Trust Co.,* 189 F.Supp. 922, 927 (S.D.N.Y. 1960), aff'd 298 F.2d 836 (2d Cir. 1962). That obligation is fully independent of any underlying agreement. *Id.* This independence from any underlying agreement allows banks to negotiate letters of credit freely without facing the risks which could arise on an ordinary contract. Verkuil "Bank Solvency and Guaranty Letters of Credit", 25 *Stan.L.Rev.* 716, 720 (1973). The obligation, also, is absolute. *Id.*

Three exceptions to the issuers duty to honor letters of credit exist. In these three exceptions, Virginia law provides for the payment to be subject to equitable or court jurisdiction. These exceptions are: (1) the document does not conform to the warranties made or negotiation or transfer; (2) the presentment of forged or fraudulent documents; and (3) "fraud in the transaction". *Va.Code* § 8.5–114(2), (Vol.1965). This section's function is to protect the integrity of the document. V.N.B. was bound to pay the draft in the absence of one of these exceptions. Although parties generally are not permitted to look behind the terms of the letter which is required to be presented, the issuer is allowed to do so in these instances in which the documents presented may be the products of fraud. Verkuil, *supra* at 720. Save for these three exceptions the letter of credit is independent of the underlying agreement. Nothing alleged in the motion places this matter within any of the three exceptions.

 Section 362 stays actions against the debtor, the debtor's property and the property of the estate. The statute does not stay actions against issuers of letters of credit that are liable on contracts independent of any contracts with the debtors or the estates. The requisite showing of interference with debtor's estate is not present. *In re Roll Form, supra.* V.N.B. paid funds to Xerox in accordance with its contract to do so. Xerox did not violate the § 362 stay.

For the above reasons, Debtor's Motion that a show cause be issued requiring Xerox to show cause why it should not be found in civil contempt is not well founded and Debtor's request for return of the funds will not be granted.