Herbert Carlson, Iversen, Carlson & Assoc., Chicago, Ill., for Protective Ins. Co.

## In re NORTH SHORE & CENTRAL ILLINOIS FREIGHT CO., an Illinois Corporation, Debtor.

## NORTH SHORE & CENTRAL ILLINOIS FREIGHT CO., an Illinois Corporation, Plaintiff,

v.

## AMERICAN NATIONAL BANK & TRUST COMPANY OF CHICAGO, an Illinois Corporation, and Protective Insurance Company, Defendants.

Bankruptcy Nos. 83 B 3439, 83 A 933.

United States Bankruptcy Court, N.D. Illinois, E.D.

June 8, 1983.

### MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

The issue presented in this cause of action concerns the right of a beneficiary to collect on an irrevocable letter of credit once a customer has filed a petition in bankruptcy.

On March 3, 1981, North Shore & Central Illinois Freight Company (hereinafter referred to as the debtor), arranged for a $50,000.00 letter of credit (No. 201464) with American National Bank and Trust Company of Chicago (hereinafter referred to as "ANB"). The beneficiary of the letter of credit is Protective Insurance Company (hereinafter referred to as Protective). The letter of credit was issued to provide Protective with adequate security against any liability it might incur while serving as surety for the debtor. The debtor alleges that Protective was terminated as its surety on January 31, 1983.

On March 14, 1983, the debtor filed a voluntary petition for relief under Chapter

11 of the Bankruptcy Code. On March 22, 1983, Protective sought to draw the $50,-000.00 from "ANB" as provided for under the terms of the letter of credit No. 201464. The debtor then brought an adversary complaint (83 A 933) seeking to prevent "ANB" from disbursing the $50,000.00 to Protective. A temporary restraining order was granted by the Bankruptcy Court. Protective then filed a motion to dismiss the debtor's complaint and the right to draw upon the letter of credit. Consequently, this court must determine whether the debtor's bankruptcy affects the right of Protective to draw upon the letter of credit.

The debtor contends that upon the filing of a bankruptcy petition, the automatic stay provisions of 11 U.S.C. § 362 (Supp. IV 1980) serve to prevent Protective from drawing upon the letter of credit. Implicit in this argument is the proposition that the letter of credit is property of the bankrupt's estate pursuant to 11 U.S.C. § 541 (Supp. IV 1980). *See Globe Construction Co. v. Oklahoma City Housing,* 571 F.2d 1140, 1143 (10th Cir.1978), *cert. den.* 439 U.S. 835, 99 S.Ct. 117, 58 L.Ed.2d 131 (1979) (The stay provisions of Section 362 are inapplicable as far as it concerns property which is not part of the estate and which does not belong to the debtor). Prior to determining whether a letter of credit is property of the debtor's estate pursuant to Section 541, a brief discussion of the purposes served by letters of credit is warranted.

Letters of credit traditionally have served as an important source of financing for commercial transactions. *See* Baird, *Standby Letters of Credit in Bankruptcy,* 49 U.Chi.L.Rev. 130 (1982). Essentially, the purpose of a letter of credit is to insure the certainty of payment for services or goods rendered regardless of any intervening misfortune which may befall the other contracting party. Generally, the party who benefits from the provision of the goods or services will arrange for a letter of credit to be issued by a bank. Under the terms of the letter of credit, the provider of the goods or services is named as beneficiary.

The transaction involved in this controversy resembles a standby letter of credit arrangement. Under a standby letter of credit arrangement the bank becomes primarily liable to the beneficiary upon the default of the bank's customer. In return the bank charges the customer a fee based upon the customer's probability of insolvency. It is argued that this arrangement spreads the allocation of risk to the parties who are best able to ascertain the risk. *Id.* at 134. The success of letter of credit arrangements as a financing tool is demonstrated by the widespread use of letters of credit to facilitate commercial transactions.

Turning to the case at hand, in a recent case involving a surety arrangement, a bankruptcy court held that a letter of credit and its proceeds were not property of the estate within the meaning of Section 541. *In re M.J. Sales & Distributing Co., Inc.,* 25 B.R. 608, 614 (Bkrtcy.S.D.N.Y., 1982). The Court in *M.J. Sales* allowed a surety to draw upon a letter of credit subsequent to the debtor's filing of a bankruptcy petition. The court based its decision on the notion that a letter of credit represented an "irrevocable obligation by an issuing bank to pay a beneficiary in accordance with its terms." *Id.* Implicit in this conclusion was the fact that the automatic stay provisions of Section 362 were inapplicable.

Prior to *M.J. Sales,* several courts reached a similar result regarding the right of a beneficiary to draw upon a letter of credit subsequent to the customer's filing of a bankruptcy petition. In *In re Printing Department, Inc.,* 20 B.R. 677 (Bkrtcy.E.D.Va., 1981), the court allowed the seller of machinery to draw upon a letter of credit after the buyer had declared bankruptcy. The court stated that "when a bank issued an irrevocable letter of credit it assumes an obligation to honor drafts which comply with that credit, that obligation is fully independent of any underlying agreement." *Id.* at 681; *See also In re Page,* 18 B.R. 713, 717 (D.C., 1982). (if payment on a letter of credit would be routinely delayed by the filing of a Chapter 11 petition, the intended substitution of a bank for its less creditworthy customer would be defeated). Con-

sequently, this court holds that the letter of credit is not property of the debtor's estate within the meaning of Section 541.

Recognizing the important function that letters of credit play in the commercial marketplace, this court holds that Protective is entitled to draw upon the letter of credit held by "ANB" despite the bankrupt status of the debtor. *See also,* Baird, *Standby Letters of Credit in Bankruptcy,* 49 U.Chic.L.Rev. 130, 147 (1982) (an injunction would only disrupt the fundamental and long-established principle governing letters of credit—that the bank's obligation to pay is independent of the underlying transaction).[1] Since this court holds that the letter of credit is not property of the debtor's estate pursuant to Section 541, the debtor's contentions regarding preferences with respect to Protective are made moot. This holding is limited to the right of Protective to draw upon the letter of credit from "ANB". Any claims which the debtor has against Protective are necessarily preserved.

Finally, this court rejects the debtor's contentions that Protective has engaged in fraudulent conduct. *See* Ill.Rev.Stat.Ch. 26, ¶ 5–114(2) (1981) (a court may enjoin the honoring of a letter of credit when documents are forged or fraudulent or there is fraud in the transaction). The debtor did not amend its complaint to include a fraudulent cause of action against Protective. Instead, only in its memorandum of law does it mention possible violations of a fraudulent nature by Protective. Since these allegations are not supported by any evidence, this does not satisfy the minimum burden of proof necessary to establish a fraudulent cause of action.

Consequently, this court grants Protective's motion to dismiss the debtor's adversary complaint seeking a restraining order. Protective is now free to draw upon the letter of credit No. 201464 held by "ANB". Protective is to submit a draft order in accordance with this Opinion within five (5) days.

---

1. The debtor cites *Twist Cap, Inc. v. Southeast Bank,* 1 B.R. 284 (Bkrtcy.D.Fla., 1979) for the proposition that the bankruptcy court can enjoin a beneficiary from drawing upon a letter of credit arranged by a bankrupt. To the extent Twist Cap can be read to support this proposition, this court rejects and instead finds compelling the position taken in recent decisions cited above by Professor Baird in his law review article, *supra.*