**CONCERNED CITIZENS FOR NEIGHBORHOOD SCHOOLS, INC.**

v.

**The BOARD OF EDUCATION OF CHATTANOOGA, TENNESSEE, et al.**

No. CIV-1-74-60.

United States District Court,
E. D. Tennessee, S. D.

July 19, 1974.

Jack Kershaw, Nashville, Tenn., for plaintiff.

Witt, Gaither, Richardson, Henniss & Whitaker, Chattanooga, Tenn., for all defendants other than David M. Pack, Atty. Gen.

## MEMORANDUM OPINION

FRANK W. WILSON, Chief Judge.

This is a declaratory judgment action brought by a corporate organization known as "The Concerned Citizens for Neighborhood Schools, Inc.," seeking to have the Tennessee Compulsory School Attendance Law declared unconstitutional under both the Tennessee and United States Constitutions. The case was filed in the Chancery Court for Hamilton County, Tennessee, and removed to this court by the defendants.

It is now before the Court upon the following motions: (1) the plaintiff's motion for an order temporarily enjoining enforcement of the Compulsory School Attendance Law, and (2) plaintiff's motion to be allowed to amend the original complaint so as to add additional parties as plaintiffs.

Although no issue has been raised by either party with regard to the jurisdiction of this Court, it is appropriate that the Court should consider this threshold issue. The defendants aver that removal jurisdiction exists under Sections 1442(a)(1) and 1443(2) of Title 28 U.S.C. With reference to Section 1442(a)(1), the defendants' contention apparently is that, by reason of the school desegregation orders of this Court in the case of Mapp v. Board of Education, Civil Action No. 3564, they are persons acting under "any officer of the United States . . . for any act under color of such office . . ." insofar as they are responsible for enforcing the Compulsory School Attendance Law. This contention is most questionable upon two grounds. In the first place, it is questionable that a person subject to an order of the Court in federal court litigation thereby becomes a "person acting under . . . any officer of the United States" as those terms are used in Section 1442(a)(1). In the second place, it is questionable whether the enforcement of the Compulsory School Attendance Law by the defendants is an "act under color of such office" as those terms are used in Section 1442(a)(1).

■ However, it would appear that this lawsuit was properly removable under Section 1443(2) providing for the removal of cases arising out of "any act under color of authority derived from any law providing for equal rights . . ." See Frank v. Braddock, 420 F.2d 690 (5th Cir. 1969). See also Burns v. Board of School Commissioners, D.C., 302 F.Supp. 309, aff'd 437 F.2d 1143 (7th Cir. 1971). Additionally, it would appear that removal would be proper under Section 1343(3) and (4) and Section 1441 of Title 28 U.S.C., although these statutory references were not cited in the removal petition.

A second threshold issue that must be resolved in this lawsuit is with reference to the standing of the corporate plaintiff to maintain the lawsuit. As stated in the case of Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636:

> ". . . The question of standing depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy', Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663, 678, as to insure that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.'

> \* \* \* \* \* \*

> ". . . A mere 'interest', no matter how longstanding the interest and no matter how qualified the organization in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' within the meaning of [the law]."

■ It is apparent that the corporate plaintiff, being neither a taxpayer, parent, student, school, or school personnel, could at most have only an academic interest in the application of a school attendance law. It accordingly could not have standing to maintain this lawsuit. See also United States v. Richardson, —— U.S. ——, 94 S.Ct. 2940, 41 L.Ed.2d 678 (Decided June 25, 1974).

■ In an effort to remedy this deficiency, the plaintiff has filed a motion to be allowed to amend its complaint so as to join as parties plaintiff certain individuals. The motion to amend is defective in that it identifies the individual plaintiffs and their interest in the lawsuit only by reference to a petition to intervene in the separate lawsuit of Mapp et al. v. Board of Education et al., No. 3564 in this court. However, subject to the plaintiff filing an amendment properly identifying the individual plaintiffs and their interest in this law-

suit, the plaintiff's motion to amend will be allowed. The Court will proceed to a resolution of the other issues herein upon the assumption that this will be accomplished. Otherwise, the plaintiff's lawsuit will stand dismissed for lack of standing on the part of the corporate plaintiff to maintain the action.

■■ A third threshold issue in this lawsuit not asserted by either party but with which the Court must concern itself is whether the issues here presented require the convening of a three-judge court pursuant to 28 U.S.C. § 2281 et seq., or whether those issues may be resolved by a single judge. This matter was posed by the Court at the hearing upon the motion for a preliminary injunction, with the parties appearing to concede that the lawsuit did not pose issues requiring a three-judge court for their disposition. However, as noted at the outset of this memorandum, the relief sought in this lawsuit is to obtain an interlocutory and permanent injunction restraining the enforcement of a state statute upon federal constitutional grounds. With certain relevant exceptions hereinafter noted, this is precisely the form of litigation requiring disposition by a three-judge court pursuant to Section 2281, Title 28 U.S.C. This is true whether the plaintiff's attack is considered as being directed only toward alleged unconstitutional application of an otherwise valid statute or whether it is directed toward the constitutionality of the statute on its face, Query v. United States, 316 U.S. 486, 62 S.Ct. 1122, 86 L.Ed. 1616 (1942); Department of Employment v. United States, 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966). Noting the relevant exceptions referred to above, a three-judge court is not required (1) if it is possible to enjoin state officials without holding the statute unconstitutional [Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L. Ed. 800 (1941); Ex Parte Bransford, 310 U.S. 354, 361, 60 S.Ct. 947, 84 L.Ed. 1249 (1940)]; (2) if the suit is directed only to local officers, or to state officers performing acts purely of local concern [Rorick v. Board of Commissioners, 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242 (1939); Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967)], as distinguished from local officers performing a state function that embodies a policy of statewide concern [Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935); Sailors v. Board of Education, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967)]; or (3) if the federal constitutional claim is insubstantial or essentially fictitious [Ex Parte Poresky, 290 U. S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1934); Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962)].

Even where a three-judge court is required, the statute expressly provides that a single judge, upon a showing of irreparable damage, may act upon a motion for a temporary restraining order. Such an order, however, may remain in effect only until a hearing may be had before a three-judge court, 28 U.S.C. § 2284(3). This statutory exception is not of relevance to this lawsuit as the relief presently sought is not a temporary restraining order but rather a preliminary or interlocutory injunction.

The specific statute here under attack is as follows:

49–1708. *Ages of compulsory attendance.*—Every parent, guardian, or other person residing within the state of Tennessee, having control or charge of any child or children between the ages of seven (7) and sixteen (16) years, both inclusive, shall cause such child or children to attend public or private day school, and in event of failure to do so, shall be subject to the penalties hereinafter provided.

Provided, however, that for any good and substantial reason as determined by a parent or other person having legal custody of a child and agreed to by the respective local board of education, such parent or person may withdraw his child from a public school

provided within thirty (30) days the parent or person having legal custody of the child places the child in a public school designated by such local board of education, or in a private school.

Before moving to the allegations of the plaintiff's complaint with reference to the foregoing statute, it may be noted that a number of exemptions are provided with reference to the foregoing school attendance law (*See* TCA § 49-1710), but these are not in issue and need not be further considered.

In summary, the plaintiff contends in its complaint that the Tennessee Compulsory School Attendance Law is being applied by the defendants in Chattanooga, not for any educational purpose, but rather to achieve a racial presence in the schools, a purpose that is, so it is contended, detrimental to education. The plaintiff contends that when so applied the Compulsory School Attendance Law is a violation of the federal constitutional rights of both the parent and the student, to due process, equal protection of the law, freedom of speech, freedom of assembly, and to privacy. It is further contended that the Compulsory School Attendance Law is irrelevant to school desegregation as that purpose can be accomplished by other means.

Compulsory school attendance laws are neither of recent origin upon the American legal and educational scenes, nor are they legislative experiments limited to Tennessee. Furthermore, such laws not only predate the era of school desegregation inaugurated in 1954 with Brown v. Board of Education, 347 U.S. 483, 74 S. Ct. 686, 98 L.Ed. 873, but they long predate that era. *See, e. g.,* Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). *See also* Wisconsin v. Yoder, 406 U.S. 205, 226 note 15, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). The Tennessee law presently under attack was enacted in 1947 and it was long preceded by prior legislation to a similar effect.

The long and widespread experience under compulsory school attendance laws and their infrequent constitutional challenge renders them more a measure of the commitment of the Nation to education than a measure of constitutional limitations in this sector of the law. As stated in Brown v. Board of Education, *supra,* 347 U.S. at 493, 74 S.Ct. at 691:

"Today education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society."

While these matters are by no means decisive of the constitutional issues here sought to be raised, the fact that the Tennessee Compulsory School Attendance Law should become constitutionally suspect only after school desegregation in the Chattanooga school system does cast upon some doubt upon the assertion in the complaint that the present attack is irrelevant to school desegregation.

More decisive of the constitutional issue presented is the fact that, with but two qualifications hereinafter noted, the constitutionality of compulsory school attendance laws has been uniformly upheld. 79 C.J.S. Schools and Districts § 463b. As stated in 68 Am.Jur.2d, "Schools" § 227:

"Statutes making the education of children compulsory have become very general in the United States. Their constitutionality is beyond dispute, for the natural rights of a parent to the custody and control of his infant child are subordinate to the power of the State and may be restricted and regulated by municipal law."

The two qualifications to the rule just stated are the cases of Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468 (1925), and Wisconsin v. Yoder, 406 U.S. 205, 92 S. Ct. 1526, 32 L.Ed.2d 15 (1972). They form the principal basis for the plaintiff's constitutional attack in this case.

They are, however, readily distinguishable.

In *Pierce,* an Oregon school attendance law enacted in 1922 was under attack. That statute, unlike the Tennessee statute here involved, attempted to compel attendance at public schools only, thereby eliminating parochial and private schools. The Court, after stating that "no question is raised concerning the power of the state . . . to require that all children of proper age attend some school . . .", quite simply held that private and parochial schools meeting state educational standards could not be constitutionally eliminated as an alternative to public schools.

In Wisconsin v. Yoder, *supra,* the issue presented was whether persons of the Amish religious faith could be compelled to attend public or private schools beyond the eighth grade when to do so would concededly violate long established tenets of their religious faith. Balancing the State's constitutional right to further public education by compelling school attendance beyond the eighth grade against the Amish right to freely exercise their religious faith, the Court concluded that under the particular facts there presented the State's interest in education was of insufficient magnitude to override the Amish claim to the free exercise of their religion. The Amish sect was accordingly held to be exempt from compulsory school attendance beyond the eighth grade. However, in reaffirming the validity of school attendance laws in general, as likewise reaffirmed in Pierce v. Society of Sisters, *supra,* the Court went on to state:

> *"Pierce,* of course, recognized that where nothing more than the general interest of the parent in the nurture and education of his child is involved, it is beyond dispute that the State acts 'reasonably' and constitutionally in requiring education to age 16 in some public or private school meeting the standards prescribed by the State." 406 U.S. 205 at 233, 92 S.Ct. at 1542.

■■ It is accordingly apparent that the federal constitutional issue here sought to be asserted is both "insubstantial" and "essentially fictitious" in that the complaint fails upon its face to allege any cause of action in this regard. Under such circumstances a three-judge court is not required for the disposition of the case. Furthermore, under such circumstances, the complaint is subject to dismissal at this stage of the proceedings. Moore's Federal Practice, 2d ed. Vol. 2A, § 12.14; Wright & Miller, Federal Practice and Procedure, Vol. 11, § 2950 at p. 490.

■ Before dismissing the lawsuit there remains to consider the defendants' counterclaim. In that counterclaim the defendants seek a declaratory judgment themselves with regard to the constitutionality of TCA § 49–1771, a Tennessee statute enacted in 1970. Without setting forth the specifics of that statute, it is sufficient to say that it generally purports to prohibit the assignment of school pupils by race, creed, color or national origin. Without going into the constitutional issue sought to be raised, it is sufficient to note that there is no allegation in the counterclaim that the State or any of its officials has ever sought to enforce the statute against the Board of Education or other defendants herein. Nor is it alleged that they are in any way threatening to do so. Furthermore, no process has ever issued or been served upon the named co-defendant, David M. Pack, Attorney General of the State of Tennessee. Nor has process issued or been served upon any other state official, although this lawsuit has been filed and pending for more than four months. The counterclaim and cross claim will accordingly be dismissed along with the original action. An order will enter to this effect.