Alan G. HARDIN, Jr., et al., Plaintiffs,

v.

HOUSTON CHRONICLE PUBLISHING COMPANY et al., Defendants.

Civ. A. No. 74–H–643.

United States District Court,
S. D. Texas,
Houston Division.

July 11, 1977.

See also D.C., 426 F.Supp. 1114.

Schleider & Ewing, Ben H. Schleider, Jr., Houston, Tex., for plaintiffs.

Liddell, Sapp, Zivley & Brown, W. Robert Brown, Houston, Tex., for defendants Houston Chronicle Publishing Company, et al.

Butler, Binion, Rice, Cook & Knapp, Frank J. Knapp, James E. Crowther, Houston, Tex., for defendant Houston Post.

## MEMORANDUM OPINION

NOEL, District Judge.

This action came before the Court on the application of plaintiffs for a preliminary injunction and after considering the evidence and the memoranda of law submitted by counsel, the Court denied the application on June 14, 1977. This memorandum opinion is entered to set forth the reasons for the Court's decision.

This is an antitrust action for monetary and injunctive relief brought by several independent newspaper distributors against the Houston Chronicle Publishing Company (hereinafter referred to as the Chronicle). Plaintiffs have distributed the Houston Chronicle newspaper in Houston, Texas pursuant to an Independent Contractor Agreement and Transportation Allowance Agreement which each distributor entered into with the Chronicle. These contracts provided for termination at will by either party upon fifteen (15) days written notice to the other party.

In late April, 1977, the Chronicle sent a letter to all of its distributors, including the plaintiffs, in which the Chronicle gave no-

tice that it was terminating each of the distributors effective June 30, 1977. This letter stated that the Chronicle was changing its system of newspaper delivery effective July 1, 1977. The Chronicle offered continued employment to each distributor, including each plaintiff, under a new contract which would implement the new system. The distributors were given until June 1, 1977 in which to indicate whether they would sign the new contract.[1] Distributors under the new contract will be referred to as delivery agents.

In their Application for Preliminary Injunction, plaintiffs allege that they will be irreparably harmed if they are terminated, or if they are forced to sign the new contract under threat of termination. Plaintiffs contend that the new system is not a substantive change in the Chronicle's distribution system but is only a change in form which will strengthen the Chronicle's ability to manipulate the plaintiffs, fix the retail price of the newspaper, and continue its exclusive territorial allocations among the distributors. However, they also contend that the Chronicle's attempt to change the distribution system is an admission that its present practices violate the antitrust laws. The Chronicle, on the other hand, while maintaining that the present system does not violate the antitrust laws, asserts that the decision to implement the new system is founded upon valid business reasons.

Under the current distribution system, the relationship between the Chronicle and its distributors, including plaintiffs, is vertical in nature, not horizontal. The Chronicle publishes the newspaper and sells it to the distributors who, in turn, make sales to individual buyers. The Chronicle does not sell directly to individual buyers. The new distribution system represents a complete and total departure from the current system. The fundamental concept of the new system is that the newspaper will be sold directly by the Chronicle to its individual customers. Effective July 1, 1977, all news-

---

1. The June 1 deadline was extended until June 15 by the Chronicle so that the parties could have sufficient time to brief the issues and the Court could rule on plaintiffs' application before the deadline expired.

papers will be sold by the Chronicle directly to the individual customer without any intermediary purchaser. The Chronicle will do all customer solicitation, all billing, virtually all collections, will assume all risk of non-collections, will assume all risk of damaged or non-delivered newspapers, and will receive all customer complaints and service requests. The only service to be performed by the delivery agents is delivery.[2]

■ Plaintiffs assert that the new system is an improper consignment system in violation of *Simpson v. Union Oil Co.*, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964). However, plaintiffs have failed to present any evidence or offer any argument or authority which shows that the new system is an invalid consignment system. The consignment system in *Simpson* was invalidated because the economic risk remained with the distributor. Here the economic risk is borne by the Chronicle. The plaintiffs here have offered no evidence that they will bear the economic risks of the new distribution system. What evidence there is indicates the contrary. The Court finds that the new system for delivery of defendant's newspapers is not a subterfuge or mask for an improper consignment agreement or any other agreement covering the purchase and resale of the newspapers. The new contract with the delivery agents is strictly a delivery agreement under which the Chronicle will be selling its newspapers directly to the individual buyers.

In order to implement the new system, the Chronicle terminated all of the existing distributors. These terminations were made pursuant to the Chronicle's express right to terminate upon fifteen (15) days written notice. In terminating the distributors, the Chronicle did not in any way attempt to retaliate against plaintiffs, or any of them, because of their participation in this antitrust litigation. The contracts of all the distributors, whether or not they were involved in this litigation, were terminated on the same terms and at the same time. All plaintiffs, with the exception of those no longer engaged in distributing newspapers for the Chronicle, were offered the same opportunity for continued employment under the new system as other distributors. There was no discrimination against plaintiffs in their termination or in the offer to participate in the new distribution system.

The decision to implement the new distribution system was based on valid business reasons. The new system is being implemented to enable the Chronicle to provide better service to its existing circulation, and to enable the Chronicle to develop new circulation in the growing Houston metropolitan area. The current distribution system is inefficient and no longer serves the circulation and service objectives of the Chronicle. The current distribution system has been attacked under the antitrust laws in this lawsuit and the desire of the Chronicle to avoid violation or the asserted violations of the antitrust laws is also a valid business reason for the change.

■ In order to show that they are entitled to preliminary injunctive relief, the plaintiffs must show: (1) there is a substantial likelihood that movant will prevail on the merits; (2) there is a substantial threat that movant will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to movant outweighs the threatened harm the injunction may do to the opposing party; and (4) granting the preliminary injunction will not disserve the public interest. *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). Plaintiffs have energetically argued that they have shown a strong likelihood of success on the merits; however, this showing has been to success on their claims that the old system of distribution violated the antitrust laws, rather than to success with regard to whether the new system or change to the new system will violate the antitrust laws. There has been no showing that the proposed distribution system violates the

---

**2.** The delivery agents will make some collections until the new billing system is completely instituted. They will receive additional compensation for making these collections. However, the risk of non-collection will be on the Chronicle, not on the delivery agent.

antitrust laws and therefore there has been no showing that the current distribution system should be maintained. Plaintiffs have failed to show any likelihood of obtaining a permanent injunction which maintains the current distribution system or which prevents the implementation of the new system.

■ The change in the method of distribution does not violate the antitrust laws. The new distribution system will not have any anticompetitive effects. There will be no price fixing since the publisher will be selling its own product directly to its customers at a price it establishes. Further, there will not be any territorial restrictions for similar reasons. On the showing plaintiffs have made, if the Chronicle were enjoined, a manufacturer could be prevented from ever replacing a system of independent distributors with its own system of direct sales. See Knutson v. Daily Review, Inc., 548 F.2d 795, 803 (9th Cir. 1976); Cartrade, Inc. v. Ford Dealers Adv. Ass'n, 446 F.2d 289, 294 (9th Cir. 1971). The antitrust laws do not provide any basis for such a result. Courts have uniformly refused to enjoin newspaper publishers from changing, for valid business reasons, their systems of distribution from that of independent distributors to direct sales. Naify v. McClatchy Newspapers, [1977] Trade Reg. Rep. (CCH) ¶ 61,383 (N.D.Cal. April 21, 1977); Knutson v. Daily Review, Inc., supra; McGuire v. Times Mirror Co., 405 F.Supp. 57 (C.D.Cal.1975); Lamarca v. Miami Herald Publishing Co., 395 F.Supp. 324 (S.D.Fla.1975), aff'd, 524 F.2d 1230 (5th Cir. 1975) (without published opinion).

■ Plaintiffs claim that the effect of the new distribution system is to allow the Chronicle to continue to fix the resale price of the newspapers. There is no question that the Chronicle under the new system will control the price of the newspapers to the consumer, but that control is the result of the Chronicle's direct sales. This is not an unlawful restraint on prices. It is permissible for a publisher, like other manufacturers, to set its prices to those who buy directly from the publisher.

■ This Court does not reach the issues, nor is any conclusion made, of whether or not a claim may lie for wrongful termination of the distributorship agreements or for alleged violations of the antitrust laws prior to the change in distribution systems. Assuming, but not deciding, that plaintiffs can prove that the Chronicle violated the antitrust laws prior to the change, such would give rise to money damages, but would not provide a basis for the injunctive relief plaintiffs seek. See Lamarca v. Miami Herald Publishing Co., supra at 328. The change was not made in order to perpetuate the alleged antitrust violations, and plaintiffs apparently concede that the change in distribution systems may eliminate any possible antitrust violations.

■ Plaintiffs have argued they will suffer irreparable injury if the injunction is not granted. Since the contracts under which plaintiffs were operating their businesses were terminable at will by either party on fifteen days' notice and there was no discrimination in the terminations, the terminations were a foreseeable risk of doing business. The Court, therefore, finds that the plaintiffs have failed to show irreparable injury.

■ Plaintiffs have also not demonstrated any unusual hardships in this case that would warrant the issuance of an injunction. Balancing the hardships, the Court is of the opinion that the Chronicle would be severely damaged should an injunction issue because of the cost already incurred to implement the new system and because of the confusion which would result in delaying or preventing the change. A substantial portion of the current distributors, including some of the plaintiffs, have indicated their approval of the new system and an injunction would severely damage the implementation of the system with respect to those who have chosen to become delivery agents.

Finally, the Court finds that the public interest would be disserved if a preliminary injunction were granted. The Chronicle has submitted its belief that it can provide

better service to its current and future subscribers under the new system of distribution and the Court finds this belief to be reasonable and justified. Accordingly, the public interest could be disserved if the injunction were granted.

For the foregoing reasons, the Court holds that plaintiffs have failed to satisfy the requirements for injunctive relief. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law.

The Clerk shall file this Memorandum Opinion and send copies to counsel.