In the Matter of ROLL FORM PRODUCTS, INC., Debtor.

ROLL FORM PRODUCTS, INC., Plaintiff,

v.

ALL STATE TRUCKING COMPANY, Newman Bros. Trucking Company, Baltimore & Ohio Railroad Company, David Graham Company, Hall's Motor Transit Company, Mawson & Mawson, Inc., and Youngstown Cartage Company, Defendants.

Bankruptcy No. 79 B 1368.

United States Bankruptcy Court, S. D. New York.

Jan. 19, 1981.

Glass, Howard & Crane, New York City, for debtor; Stephen G. Crane, New York City, of counsel.

Horvath & Young, New York City, for Mawson & Mawson, Inc.; Stanley Horvath, New York City, of counsel.

Horwitz, Toback & Hyman, New York City, for Newman Bros.; Arthur M. Toback, New York City, of counsel.

## MEMORANDUM OPINION

JOEL LEWITTES, Bankruptcy Judge.

On December 10, 1980, Roll Form Products, Inc., this Chapter XI debtor ("debtor"),[1] commenced an adversary proceeding[2] against the named defendant trucking companies wherein the debtor seeks injunctive relief, an accounting, actual and punitive damages, and an order of contempt premised upon alleged violations by the defendants of the automatic stay provisions of the Bankruptcy Rules.[3] Coincident with the filing of the complaint, the debtor sought, and obtained, a temporary restraining order and order to show cause setting down, for a hearing, its motion for preliminary injunctive relief.[4] In particular, the debtor, by that motion, seeks to enjoin the defendants, pending determination of its underlying action, from instituting or prosecuting lawsuits, or otherwise collecting or attempting to collect, pre-Chapter XI freight charges from suppliers or customers of the debtor.

I

## Factual Background and Proceedings

From the testimony adduced at the preliminary injunction hearing, as well as from the documents admitted into evidence, it appears that the debtor, in the conduct of its shipping business, billed its customers for goods shipped to them, including a charge therein for shipping expenses. The debtor then contracted with a carrier for the delivery of the goods to the debtor's consignee—customers. The bills of lading which contained a clause stating that "The owner or consignee shall pay the freight", were marked "prepaid", although, in fact, the truckers extended credit to the debtor[5] by permitting the latter to pay its shipping charges monthly.

Following the debtor's Chapter XI filing, most, though not all, of the defendants, filed claims against the debtor, as shipper, for unpaid freight charges. In most cases the customer-consignees involved had already paid sums representing freight charges to the debtor, but it was admitted that this was not the case with at least some of the customer-consignees. Subse-

---

1. Former Bankruptcy Act § 301 *et seq.*, 11 U.S.C. § 701 *et seq.* Since the instant bankruptcy case was commenced on August 1, 1979, prior to the effective date of the Bankruptcy Reform Act of 1978, (see § 402[a] of the 1978 Act), all matters and proceedings relating to this case must be conducted and determined as if the New Code had not been enacted. Bankruptcy Reform Act of 1978, Section 403(a).

2. Bankruptcy Rule 701(5), 411 U.S. 1068, 93 S.Ct. 3150, 37 L.Ed.2d lxviii.

3. Bankruptcy Rule 11–44(a), 415 U.S. 1033, 94 S.Ct. 3255, 39 L.Ed.2d L.

4. Fed.R.Civ.P. 65, governing injunctions, is made applicable, with exceptions not relevant here, to adversary proceedings commenced in the Bankruptcy Court. Bankruptcy Rule 765, 411 U.S. 1085, 93 S.Ct. 3160, 37 L.Ed.2d lxxiii.

5. 49 C.F.R. 1320.1 (1979).

quent to the filing of the petition the defendants attempted to, or did recover, from the consignee-customers on some of these unpaid freight charges. As a result, some customer-consignees withheld, from monies owed to Roll Form, sums equal to those claimed by the defendants. The debtor, seeks, by the instant motion, to enjoin these activities.

## II

Recent cases, in this circuit, have restated the showing a party must make in order for it to prevail on a request, as here, for preliminary injunctive relief:

"(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." [6]

■ In our view, the debtor has failed to satisfy any of these essential requirements.

## A

### *Irreparable Harm*

■ In support of its claim for injunctive relief, the debtor alleges that it will suffer irreparable harm if such relief is granted in that the defendant's unchecked "harassment" of customers would result in the termination by the customer-consignees of the latter's business relationships with the debtor. Debtor's sales manager, its sole witness at the preliminary injunction hearing, testified, however, that only two customer-consignees threatened to sever their dealings with the debtor. Quite critically to our analysis here, the testimony reveals that a motivating factor for such threatened termination was the mere filing, by the debtor, of the Chapter XI petition.[7] Where, as here, the movant's conduct, *i. e.*, its Chapter XI filing, may be the cause of its present discomfort, and where the debtor's "financial position is of such a precarious nature",[8] that the potential harm to it by the defendants' activities may indeed be speculative,[9] irreparable injury is not demonstrated. Moreover, even if, as further argued by the debtor, it could amply establish irreparable injury in that its reputation, goodwill,[10] or viability as a Chapter XI debtor,[11] were jeopardized by a disruption in cash flow resulting from deductions for freight charges taken by customers from their total outstanding obligations owed by them to the debtor, preliminary injunctive relief, without more, is unwarranted. As noted earlier,[12] "[i]rreparable injury is not itself a sufficient predicate for the entry of a preliminary injunction."[13] There must also be a showing that the defendants engaged in an unlawful activity which was the cause of the debtor's allegedly threat-

**6.** *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). See also *Union Carbide Agricultural Products Co., Inc. v. Costle*, 632 F.2d 1014, 1017 (2d Cir. Sept. 24, 1980); *Seaboard World Airlines, Inc. v. Tiger International, Inc.*, 600 F.2d 355, 359 (2d Cir. 1979); *Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.*, 604 F.2d 755 (2d Cir. 1979); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206 ·7 (2d Cir. 1979).

**7.** The threatened termination by customers of commercial relationships with the debtor arguably was a "foreseeable risk" of debtor's resort to this Court for relief. *Compare Hardin v. Houston Chronicle Pub. Co.*, 434 F.Supp. 54, 57 (S.D.Tex.1977).

**8.** *Huron Valley Publ. Co. v. Booth Newspapers, Inc.*, 336 F.Supp. 659, 663 (E.D.Mich.1972).

**9.** A preliminary injunction will not issue unless the claimed injury is "[r]eal and imminent, not remote...." or speculative. *Carey v. Klutznick*, 637 F.2d 834 at 837, (2d Cir., 1980).

**10.** *Dino De Laurentiis Cinematografia, S.P.A. v. D-150, Inc.*, 366 F.2d 373, 376–7 (2d Cir. 1966).

**11.** *Compare Semmes Motors, Inc. v. Ford Motor Company*, 429 F.2d 1197, 1205 (2d Cir. 1970) where Judge Friendly observed that "the right to continue in business in which ... [the movant] had engaged for twenty years and into which his son had recently entered is not measurable entirely in monetary terms; ...."

**12.** *Supra*, note 6.

**13.** *Mullis v. Arco Petroleum Corp.*, 502 F.2d 290, 293 (7th Cir. 1974).

ened loss.[14] Thus, assuming arguendo, such irreparable injury has been demonstrated, we now turn to the alternative "to prongs of the merits test for preliminary relief." [15]

## B

### The Merits

■ The debtor asserts four causes of action in its underlying complaint. The first three [16] are erroneously grounded on the assumption that the debtor's property was somehow implicated in the collection activities of the defendant-carriers.[16a]

### (1)

It is clear that defendants' attempts to collect freight charges from debtor's customer-consignees are totally unrelated to whatever debts the latter may owe the debtor. To be sure, liability of a customer-consignee to a carrier for freight charges is statutorily based on 49 U.S.C. § 10744 [17] which renders a consignee "*prima facie* liable for the payment of the freight charges when he accepts the goods from the carrier." [18] Moreover,

"... the consignee's obligation to pay freight charges on goods delivered to it ... is an independent one, ..., and there is no requirement that a carrier proceed first or jointly against others [*i. e.* the debtor] liable for freight charges...." [19]

■ If the consignee, thereafter, deducts the amount of the freight charges it has paid over to the carrier from the monies the consignee owes the debtor for the goods shipped, the debtor has no claim against the carrier. The independent liability of the consignee *to the carrier does not implicate* the property of the debtor and accordingly, the carrier's enforcement of its rights, against the consignee, does not constitute an activity which can be deemed a cause of the debtor's claimed threatened loss.

### (2)

■ The fourth and final cause of action asserted by the debtor, in its complaint, seeks to permanently enjoin the defendants' collection efforts on the ground that such activities are "disrupting Roll Form's [the debtor's] relationships with its customers and suppliers, thereby interfering with the administration of its Chapter XI case." [20]

**14.** *Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319, 324 (2d Cir.), *cert. denied*, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969).

**15.** *Jackson Dairy, Inc. v. H. P. Hood & Sons, supra*, note 6 at 73 (Manfield, J., concurring).

**16.** The first cause of action alleges defendants' violation of the automatic stay provisions of Bankruptcy Rule 11–44(a), 415 U.S. 1033, 94 S.Ct. 3255, 39 L.Ed.2d L, the second alleges a post-petition transfer of debtor's property declared to be involved against a debtor-in-possession by Bankruptcy Act § 70(d)(5), 11 U.S.C. § 110(d)(5); and the third cause of action alleges a preferential transfer voidable by the trustee or debtor-in-possession (*see* Bankruptcy Act § 342, 11 U.S.C. § 742) under the provisions of Bankruptcy Act § 60(b), 11 U.S.C. § 96(b).

**16a.** Thus for example, the automatic stay provisions of Chapter XI do not "preclude a creditor from proceeding against a collateral pledged by an individual guarantor." *Fletcher v. Cobuzzi*, 499 F.Supp. 694, 696 (W.D.Pa. 1980). Under the Bankruptcy Reform Act of 1978, only in Chapter 13 cases, involving a *consumer* debt, do the stay provisions of that Chapter operate to stay actions by creditors

against an individual that is liable on such debt with the debtor. 11 U.S.C. § 1301(a) (1978). The stay provisions, thereunder, do not extend to an action by a creditor against a codebtor who has become "liable" in the ordinary course of his business...." Senate Report No.95–589, 95th Cong. 2nd Sess., at 138, *reprinted at* [1978] U.S.Code Cong. & Ad.News, pp. 5787, 5924.

**17.** This section of the Interstate Commerce Act, which codifies the now repealed 49 U.S.C §§ 3(2) and 323, "makes no substantive changes in the law." H.R.Rep.No.1395, 95th Cong. 2d Sess. 9, *reprinted in* [1978] U.S.Code Cong. & Ad.News, pp. 3009, 3018.

**18.** *Pittsburgh, Cin., Chi. & St. L. Ry. Co. v. Fink*, 250 U.S. 577, 581, 40 S.Ct. 27, 28, 63 L.Ed. 1151 (1919) (italics in text).

**19.** *Southern Railway System v. Leyden Shipping Corp.*, 290 F.Supp. 742, 744 (S.D.N.Y. 1968) (citations omitted).

**20.** Clearly an injunction, were it to be used here, could endure only so long as the case is being administered. Thus a *permanent* injunction against defendants' alleged disruptive ac-

**484**

■ The authority, if any, to sustain the issuance of an injunction, in the circumstances of this proceeding, must derive from § 2(a)(15) of the Bankruptcy Act,[21] which is applicable to Chapter XI cases.[22] That provision, which, in relevant part, is set forth in the margin below,[23] permits this Court to issue injunctions against proceedings in other courts where the bankruptcy court is satisfied that such proceedings would defeat or impair its jurisdiction,[24] or would embarrass its administration of the estate.[25] To protect this Courts' jurisdiction, the bankruptcy court may enjoin suits against the debtor or involving the debtor's property in another Court.[26]

■ Since, however, we have previously found no basis to hold that the property of the debtor is being interfered with by the defendants' activities,[27] an injunction under § 2(a)(15), in this case can issue only if we discern that proceedings without this Court would embarrass this Court's administration of the debtor's estate. The record here, however, does not establish[28] the

---

21. 11 U.S.C. § 11(a)(15). That section authorized this Court to

"Make such orders, issue such process, and enter such judgment, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act."

It may be noted, parenthetically, that § 105 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 105 (1978), is arguably broader in scope than § 2(a)(15) of the former Act. Section 105 provides that the bankruptcy court may "issue any order, process, or judgment that is *necessary or appropriate*" to enforce the provisions of the Reform Act. (emphasis supplied). See also the All Writs Act which provides that "[t]he Supreme Court and all courts established by Acts of Congress may issue all writs necessary or appropriate in and of their respective jurisdictions...." 28 U.S.C. § 651(a).

22. See Bankruptcy Act § 302, 11 U.S.C. § 702. See also *In re Merritt Lumber Co.*, 336 F.Supp. 325, 327 (E.D.Pa.1971).

23. See note 21, *supra*.

24. *Continental Illinois Nat. Bank & Trust Co. v. Chicago R. I. & P. R. Co.*, 294 U.S. 648, 675–76, 55 S.Ct. 595, 605–06, 79 L.Ed. 1110 (1935). *See also In re Lane Foods, Inc.*, 213 F.Supp. 133, 135 (S.D.N.Y.1963). We have held above, in Part (1), that there is no property in the actual or constructive possession of this Court involved here, to trigger the Court's "summary jurisdiction". See *Harrison v. Chamberlin*, 271 U.S. 191, 193, 46 S.Ct. 467, 468, 70 L.Ed. 897 (1926).

25. *Steelman v. All Continent Corp.*, 301 U.S. 278, 289, 57 S.Ct. 705, 709, 81 L.Ed. 1085 (1937).

26. *In re Chanticleer Assoc., Ltd.*, 592 F.2d 70, 73–4 (2d Cir. 1979).

27. See Part (1) of this opinion, *supra*.

28. The posture of the defendants here is analogous to that of a co-debtor of the bankrupt. Although § 16 of the 1898 Bankruptcy Act, 11 U.S.C. § 34 (providing that a discharge in bankruptcy shall not alter the liability of a co-debtor or guarantor) "has been construed to deny jurisdiction [to a bankruptcy court] to stay suits against co-debtors of a principal debtor in a bankruptcy proceeding", *In re Airport Associates*, 462 F.Supp. 320, 322 (D.Haw.1968), see also *Globe Const. Co. v. Oklahoma City Housing*, 571 F.2d 1140, 1143 (10th Cir. 1978), we do not endorse so broad a proposition. A careful analysis of the principal cases in this area reveals that relief was denied because the requisite showing of interference with the estate was absent and not merely because the action was commenced against a guarantor or co-debtor. See *In re Magnus Harmonica Corp.*, 233 F.2d 803 (3d Cir. 1956); *In re Nine North Church Street*, 82 F.2d 186 (2d Cir. 1936); *In re Diversey Bldg. Corp.*, 86 F.2d 456 (7th Cir. 1936); *Gorovitz v. Balkin*, 96 F.Supp. 747 (D.Mass. 1951). Since the plenary suits in these cited cases did not interfere with the pending bankruptcy cases, the courts there found no jurisdiction to protect by way of an injunction. We similarly find this Court without jurisdiction to hear or resolve the defendant's proposed suits against debtor's customer-consignees. In a strikingly similar case involving a debtor who filed under Chapter 11 of the 1978 Code, Bankruptcy Judge Lifland decided the merits of the carrier's cause of action against the customer-consignees. See *Thunderbird Motor Freight Lines, Inc. v. Penn-Dixie Steel Corp.*, 6 B.R. 817 (S.D.N.Y.1980) (Bankruptcy Court). That case is distinguishable, however, in that it was decided in accordance with the new bankruptcy legislation which expands the jurisdiction of the bankruptcy courts. See 28 U.S.C. § 1471(b).

debtor's entitlement to the "drastic"[29] relief requested.

■ To be sure, the debtor alleges no more than that its customer-consignees may take their business elsewhere if the defendants are not enjoined from pursuing what the latter perceive to be their legitimate contract rights. Clearly, defendants' self-help collection efforts, which arguably may have some deleterious effect upon the debtor's ability to finance an arrangement, cannot be deemed an interference with the administration of a Chapter XI case justifying the issuance of an injunction under § 2(a)(15).[30] While Chapter XI affords distressed debtors an opportunity to rehabilitate, it neither "guarantees continued existence to every plagued corporation", nor insulates a debtor from the ordinary risks attendant in the routine conduct of a business.

■ Fed.R.Civ.P. 65(a)(2), which we have earlier noted is applicable to proceedings in this Court provides that the hearing on an application for preliminary injunctive relief may be ordered consolidated with the trial on the merits "before or after the commencement of the hearing." A failure by the trial court to give the parties notice of such consolidation, at least before rendering a decision, is reversible error unless the affected party fails to demonstrate surprise or prejudice occasioned by the consolidation.[31] Here, although no notice of consolidation has been ordered, because the instant complaint is, as noted above, so clearly insufficient and "entirely destitute

of equity", dismissal, on the merits, of the underlying adversary proceeding is proper.[32]

## C
### Conclusion

This Court, in its discretion[33] denies debtor's motion for a preliminary injunction, dissolves the temporary restraining order heretofore granted to the debtor, and dismisses the debtor's adversary proceeding, without prejudice.

The foregoing opinion shall be deemed to constitute this Court's findings of fact and conclusions of law.[34]

Settle order on three (3) days notice in conformity with this opinion.

**29.** *Hershey Creamery Co. v. Hershey Chocolate Corp.,* 269 F.Supp. 45, 56 (S.D.N.Y.1967).

**30.** *In re New York and Worchester Express, Inc.,* 294 F.Supp. 1163, 1165 (S.D.N.Y.1968). Compare *In re Airport Associates, supra* at 322. But see *John Wesley College v. Strand,* 15 C.B.V. 215 (E.D.Mich.1977) (Bankruptcy Court) and *In re Bargain City, U. S. A. Inc.,* 212 F.Supp. 111 (E.D.Pa.1962) (dictum).

**31.** *Johnson v. White,* 528 F.2d 1228, 1231 (2d Cir. 1975).

**32.** Compare *Sheldon, Moredall Realty Corp.,* 95 F.2d 48, 49–50 (2d Cir. 1938). See *Concerned Citizens For Neighborhood Schools Inc. v.*

*Board of Education,* 379 F.Supp. 1233, 1238 (E.D.Tenn.1974).

**33.** *Checker Motors Corp. v. Chrysler Corp., supra* at 323.

**34.** Fed.R.Civ.P. 52(a), applicable in adversary proceedings in this Court by Bankruptcy Rule 752(a), 411 U.S. 1082, 93 S.Ct. 3158, 37 L.Ed.2d lxxii, and in contested matters by Bankruptcy Rule 914, 411 U.S. 1098, 93 S.Ct. 3170, 37 L.Ed.2d lxxviii, must be fairly complied with in any action in which a court grants or denies a preliminary injunction. *Mayo v. Canning Co.,* 309 U.S. 310, 316, 60 S.Ct. 517, 520, 84 L.Ed. 774 (1940).