MESKILL, Circuit Judge:
Roll Form Products, Inc., a Chapter XI debtor, appeals from an order of the United States Bankruptcy Court for the Southern District of New York, Lewittes, J.,[1] denying its motion for preliminary relief and dismissing its suit to enjoin defendants, interstate carriers, from collecting shipping charges from Roll Form’s customers and to compel repayment of charges already collected. The bankruptcy court’s decision was premised upon the applicability of the Interstate Commerce Act to this case. Because we conclude that the Act has no bearing upon the issues presented, we reverse and remand.

Background

The present case arises from Roll Form’s activities as a manufacturer of fabricated steel products. As a business procedure, Roll Form would bill its customer-consignees in advance for freight costs and in turn contract with carriers to transport the purchased goods. All shipping orders and bills of lading introduced into evidence were accordingly marked “prepaid” as to shipping charges. Furthermore, as part of this arrangement, the carriers extended credit to Roll Form for the freight charges, allowing monthly payment. The record does not indicate whether this arrangement was established contractually or informally for the convenience of the parties, and the issue was never determined by the bankruptcy court. However, since we are reviewing a dismissal on the pleadings, we must accept as true the material facts alleged by Roll Form. Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976). We therefore proceed upon the assumption that all parties to this action were contractually bound to an arrangement which provided for the customer-consignees to pay freight *152 charges exclusively to Roll Form, and for the carriers to look solely to Roll Form for payment.
Roll Form was beset by financial difficulties in the late 1970s and filed a petition for reorganization under Chapter XI of the former Bankruptcy Act, 11 U.S.C. §§ 701 et seq., on August 1, 1979.[2] At that time, Roll Form owed over $48,000 of freight charges. Soon thereafter, most of the defendants, carriers which had delivered goods to Roll Form’s customers, filed claims for unpaid freight charges with the bankruptcy court. Unsatisfied with the prospects for full recovery from those proceedings, however, the carriers attempted to, and in many instances did, recover charges directly from the customers. As a result freight charges were withheld from Roll Form’s estate.
Roll Form, believing that the carriers were depriving the bankruptcy estate of the freight charges, and fearing that the collection activities would have a devastating effect upon future business relations with the badgered customers, commenced the present proceeding by order to show cause on December 11,1980. Roll Form secured a temporary restraining order to enjoin further collections by the defendants pending a hearing on its motion for a preliminary injunction, and filed a complaint in an adversary suit seeking a permanent injunction as well as recovery of amounts already collected by defendants.[3]
The 1980s, however, fared no better for Roll Form. The bankruptcy judge not only denied the preliminary injunction, but also determined that Roll Form’s complaint was “so clearly insufficient” that he consolidated the adversary suit with the motion for preliminary relief, dismissing the entire proceeding without prior notice or hearing. 8 B.R. 479, 485 (S.D.N.Y.1981) (Bankruptcy Court).
In considering Roll Form’s request for preliminary relief, Judge Lewittes found that neither irreparable harm had been shown nor a substantive claim alleged. Roll Form had argued that defendants’ “harassment” of its customers for payment of freight charges would impair future business relationships. Judge Lewittes held, however, that the evidence at the preliminary hearing had shown that only two customer-consignees had threatened to sever business dealings with Roll Form as a result of defendants’ collection activities. He therefore concluded that the claims of irreparable injury were “speculative.” 8 B.R. at 482.
In considering the substance of the complaint, Judge Lewittes found even less merit, holding that defendants’ activities were simply not, as Roll Form contended, unlawful. Roll Form’s entire action was premised upon the assumption that, by contract, the freight charges being pursued by defendants were exclusively owed to Roll Form’s estate and were thus protected by the automatic stay provisions of the Bankruptcy Act.[4] Judge Lewittes concluded, however, that section 10744 of the Interstate Commerce Act, 49 U.S.C. § 10744 (Supp.III 1979), renders a consignee independently liable to a carrier for freight charges upon his acceptance of the delivery of goods and *153 that Roll Form’s property was therefore not implicated in the collection activities. 8 B.R. at 483.
Since Judge Lewittes’ legal analysis precluded any possibility of relief for Roll Form, he consolidated the underlying adversary suit with the preliminary hearing, dismissing the entire proceeding without availing the parties of either notice or an opportunity for further hearing. In dismissing the adversay suit, Judge Lewittes observed that such a sua sponte consolidation would constitute reversible error “unless the affected party fails to demonstrate surprise or prejudice occasioned by the consolidation.” 8 B.R. at 485 (footnote omitted). However, he concluded,
Here, although no notice of consolidation has been ordered, because the instant complaint is, as noted above, so clearly insufficient and “entirely destitute of equity”, dismissal, on the merits, of the underlying adversary proceeding is proper.
Id. (footnote omitted). From that dismissal, Roll Form appeals.
DISCUSSION
On this appeal, Roll Form seeks reversal on several grounds. First, Roll Form asserts that Judge Lewittes erred in finding that the customer-consignees were independently liable to the carriers for freight charges under the Interstate Commerce Act. Roll Form also contends that the carriers, in view of their participation in the prepayment procedure, should be estopped from collecting freight charges directly from the customer-consignees. Finally, Roll Form argues that Judge Lewittes’ consolidation of the motion for a preliminary injunction with the adversary suit without notice or an opportunity for hearing constituted a denial of due process. Since we agree with Roll Form’s first contention, we find it unnecessary to resolve the latter considerations.
Judge Lewittes based his holding that the customer-consignees owed an independent liability for freight charges to the carriers upon section 10744 of the Interstate Commerce Act, supra. That section, and the prior sections which it codifies,[5] were designed to insure that uniform rates would apply to all interstate shipments of like character. To that end, the section as a general rule renders “the consignee . . . prima facie liable for the payment of the freight charges when he accepts the goods from the carrier.” Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co. v. Fink, 250 U.S. 577, 581, 40 S.Ct. 27, 63 L.Ed. 1151 (1919). Judge Lewittes found that this statutory basis for liability is independent of any debts which the customer-consignees may owe the consignor and therefore that the carriers were pursuing charges owed directly to themselves. As a result, Judge Lewittes concluded that Roll Form’s property had not been implicated in the collection activities.
The principal purpose of section 10744 as well as the entire Interstate Commerce Act unquestionably was to eliminate all forms of rate discrimination on interstate shipments. Id.; Southern Pacific Transporta *154 tion Co. v. Campbell Soup Co., 455 F.2d 1219, 1220 (8th Cir. 1972). The Act, in our view, was not intended to “fashion a sword” to insure collection by carriers of freight charges. Nor do we think the Act was intended to impose an absolute liability upon consignees for freight charges. Its sole purpose was “to secure equality of rates to all and to destroy favoritism.” In Re Penn-Dixie Steel Corp., 6 B.R. 817, 820 (S.D.N.Y.1980) (Bankruptcy Court), aff’d, 10 B.R. 878 (S.D.N.Y.1981). Accordingly, in the absence of discriminatory practices, we agree with the Seventh Circuit that “Congress left the initial determination of a party’s liability for freight charges to express contractual agreement or implication of law.” Consolidated Freightways Corp. v. Admiral Corp., 442 F.2d 56, 62 (7th Cir. 1971). Of course, where parties fail to agree, or where discriminatory practices are present, the Interstate Commerce Act will bind the consignee to pay freight charges to the carrier on goods he accepts, this obligation being independent of the consignor’s own obligations.
We find no evidence in the record, nor has there been any allegation that the procedures employed in this case for payment of freight charges were discriminatory. Prepayment by Roll Form of shipping charges was a perfectly acceptable means of conducting business under the Interstate Commerce Act. Moreover, the extension of credit by the carriers to Roll Form for payment of these charges is expressly sanctioned by 49 C.F.R. § 1320 (1980).
That Roll Form has subsequently sought Chapter XI relief, we think, does not in itself activate the provisions of the Interstate Commerce Act. As the bankruptcy court recently stated in Penn-Dixie, a case which similarly involved a carrier’s collection of “prepaid” freight charges from consignees, The fact that Penn-Dixie is now in a Chapter 11 reorganization changes nothing. As pointed out earlier, the ICA does not insure collection in every instance. The possibility that under the scheme of bankruptcy reorganization, Penn-Dixie may be able to satisfy its indebtedness to [the carrier] by paying a lesser amount is simply not violative of the ICA’s policy and purpose. Surely, any deficiency incurred by [the carrier] because of the bankruptcy law’s important and cornerstone policy of equality of distribution ... is not discriminatory in any sense of the word as used in, and comprehended by, the ICA. “The rights and duties created by the Interstate Commerce Act are for the protection of the public against secret rebates and discriminations rather than for the enrichment of the carrier.” 13 C.J.S. Carriers § 393.
6 B.R. at 821-22.[6] In affirming Penn-Dixie, the United States District Court for the Southern District of New York observed, “[ajpplying hindsight, the credit to Penn-Dixie proved a poor choice given the unanticipated intervening insolvency proceeding.” 10 B.R. at 879. Similarly, the carriers in this case gambled that Roll Form’s credit would remain unimpaired. We do not believe that the carriers, having lost this gamble, should now be permitted to avail themselves of the Interstate Commerce Act, which seeks only to insure uniform tariffs for all shipments of like character, see Fink, 250 U.S. at 581, 40 S.Ct. at 27, as a collection device.[7]
We therefore hold that, in the absence of discriminatory practices, the parties in this action were free to allocate freight charges by contract as they wished unaffected by section 10744 of the Interstate Commerce Act. In view of the bankruptcy court’s interpretation of the legal *155 issues in this case it never reached the question of whether the prepayment arrangement had been established informally for the convenience of the parties or by definitive contract. Neither is the answer clear to us from the record. We therefore remand to the bankruptcy court for a determination of the parties’ contractual obligations concerning the freight charges.[8]
Reversed and remanded.
OAKES, Circuit Judge (concurring):
I concur in the result.

. Title IV of the Bankruptcy Reform Act, § 405(c)(1) provides for direct appeal from a “judgment, order, or decree of a United States bankruptcy judge” to this Court during the transition period between the former Bankruptcy Act and the Reform Act
(B) if the parties agree to a direct appeal to the court of appeals for such circuit, then to such court of appeals. See generally Riddervold v. Saratoga Hospital, 647 F.2d 342 (2d Cir. 1981).

. Title IV of the Bankruptcy Reform Act of 1978, § 403(a) provides:
A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.
Since this petition was filed on August 1, 1979, prior to the October 1, 1979 effective date of the Reform Act, the former Bankruptcy Act is applicable to this case.

. Roll Form also sought to obtain an accounting, compensatory and punitive damages and a penalty for contempt. Prior to the decision of the bankruptcy court, defendants David Graham Co. and Hall’s Motor Transit Co. settled with Roll Form, agreeing to look solely to Roll Form’s Chapter XI proceeding for recovery of freight charges.

. Rule ll-44(a) of the former Bankruptcy Act provides:
A petition filed under Rule 11-6 or 11-7 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of *153 any court proceeding to enforce any lien against his property, or of any court proceeding ... for the purpose of the rehabilitation of the debtor or the liquidation of his estate.
If the customer-consignees owed freight charges exclusively to Roll Form, then Rule 1 l-44(a) would operate to bar the carriers from proceeding directly against the customers, limiting them instead to the bankruptcy proceeding for recovery.

. Section 10744 codifies the now repealed 49 U.S.C. §§ 3(2) and 323. In codifying these sections, as well as the entire Interstate Commerce Act, Congress made clear that
Like other codifications undertaken to enact into positive law all titles of the United States Code, this bill makes no substantive change in the law. It is sometimes feared that mere changes in terminology and style will result in changes in substance or impair the precedent value of earlier judicial decisions and other interpretations. This fear might have some weight if this were the usual kind of amendatory legislation where it can be inferred that a change of language is intended to change substance. In a codification statute, however, the courts uphold the contrary presumption: the statute is intended to remain substantively unchanged.
H.R. Rep. No. 1395, 95th Cong., 2d Sess. 9 (1978), reprinted in [1978] U.S. Code Cong. & Ad. News 3009, 3018.

. The Penn-Dixie case was unreported as of the date of Judge Lewittes’ opinion. Subsequently, Judge Lewittes, upon learning of the case, amended footnote 28 of his opinion, 8 B.R. at 484 n. 28, in an attempt to distinguish Penn-Dixie upon the ground that it was decided under the Bankruptcy Reform Act while the present case falls under the former Act. Since the focus of both cases is on the impact of the Interstate Commerce Act upon contractual obligations, we find Judge Lewittes’ distinction unpersuasive.

. Roll Form also contends that defendants, in view of their participation in the prepayment arrangement, should be estopped from proceeding against the customers for freight charges. While many courts have invoked this *155 estoppel theory to prevent recovery of freight charges by carriers, see, e. g., Consolidated Freightways Corp. v. Admiral Corp., 442 F.2d 56, 59-62 (7th Cir. 1971); Southern Pac. Transp. Co. v. Campbell Soup Co., 455 F.2d 1219 (8th Cir. 1972), we observe that in each case the carriers were suing the customers. We do not believe that Roll Form has standing here to raise this equitable defense as an offensive weapon.

. Because we must remand in any event for further proceedings, we find it unnecessary to consider Roll Form’s claim that the bankruptcy court’s consolidation of the preliminary hearing with the adversary suit without prior notice constituted a denial of due process. We also make no comment on the appropriateness of injunctive relief in this case inasmuch as Roll Form has not challenged the bankruptcy court’s finding that no irreparable injury exists.